00/00/2008   16:10:27 FAX 2136259111          NATIONWIDE LEGAL



FILED COPY

1   Jonathan D. Selbin (State Bar No. 170222)
    jselbin@lchb.com
2   Allen Wong (*pro hac vice* motion to be filed)
    awong@lchb.com
3   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
    250 Hudson Street, 8th Floor
4   New York, NY  10013-1413
    Telephone:  (212) 355-9500
5   Facsimile:  (212) 355-9592

6   Kristen E. Law (State Bar No. 222249)
    klaw@lchb.com
7   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
    Embarcadero Center West
8   275 Battery Street, 28th Floor
    San Francisco, CA  94111-3339
9   Telephone:  (415) 956-1000
    Facsimile:  (415) 956-1008

10

    Attorneys for Plaintiffs and the Proposed Class
11
                   UNITED STATES DISTRICT COURT
12
                   CENTRAL DISTRICT OF CALIFORNIA
13

14
    THOMAS and CHRISTINE HORNE, on        Case No.  CV09-4126 DDP(MANx)
15  behalf of themselves and all others
    similarly situated,                   **CLASS ACTION COMPLAINT**
16
                        Plaintiffs,       **(1)  MAGNUSON-MOSS ACT;**
17
    v.                                    **(2)  SONG-BEVERLY ACT;**
18
    HARLEY-DAVIDSON, INC., HARLEY-        **(3)  CONSUMER LEGAL REMEDIES ACT;**
19  DAVIDSON MOTOR COMPANY, INC.,
    and HARLEY-DAVIDSON FINANCIAL         **(4)  CALIFORNIA CIV. CODE § 1710;**
20  SERVICES, INC.,
                                          **(5)  BUSINESS & PROFESSIONS**
21                      Defendants.           **CODE §§ 17200 & 17500;**

22                                        **(6)  FRAUDULENT INDUCEMENT;**

23                                        **(7)  PROMISSORY ESTOPPEL; and**

24
                                          **(8)  UNJUST ENRICHMENT**
25
                                          **DEMAND FOR JURY TRIAL**
26

27

28

    810088.9                                        CLASS ACTION COMPLAINT

1    Plaintiffs Thomas Horne and Christine Horne ("Plaintiffs"), individually and on

2    behalf of all others similarly situated, allege on personal knowledge, except as otherwise noted:

3                                    **INTRODUCTION**

4           1.      This is a class action against Harley-Davidson, Inc., Harley-Davidson

5    Motor Company, Inc., and Harley-Davidson Financial Services, Inc. (collectively "Harley-

6    Davidson") for falsely advertising and misrepresenting that under Harley-Davidson's contract for

7    extended service coverage of Harley-Davidson motorcycles ("Extended Service Plan" or "Plan"),

8    customers would pay no more than $50 for each repair visit ("$50 Deductible").  In violation of

9    Federal and State law, Harley-Davidson unlawfully concealed and failed to disclose prior to or at

10   the time of its sale of the Extended Service Plan that, in fact, when purchasers of the Extended

11   Service Plan bring their motorcycles to Harley-Davidson for repairs, Harley-Davidson charges

12   not only the $50 Deductible, but additionally charges customers the costs for diagnostic and

13   teardown procedures performed as part of the repairs, without any limitation as to the amount of

14   such charges, in direct conflict with its promise to limit charges to only the $50 Deductible.

15          2.      Plaintiffs bring this action for actual damages, equitable relief (including

16   restitution, injunctive relief, and disgorgement of profits), and all other relief available on behalf

17   of themselves and all similarly-situated individuals and entities who purchased from Harley-

18   Davidson an Extended Service Plan for motorcycles that were advertised, marketed, and sold by

19   Harley-Davidson ("Motorcycles").  All of the claims asserted herein arise out of Harley-

20   Davidson's material misrepresentations and omissions regarding the terms of the Extended

21   Service Plan and violations of Federal and State law requiring Harley-Davidson to fully and

22   conspicuously disclose in simple and readily understood language the terms and conditions of the

23   Extended Service Plan, specifically the exclusion of charges for diagnostic and teardown

24   procedures from coverage.

25                                   **THE PARTIES**

26          3.      Plaintiffs Thomas and Christine Horne are and at all relevant times have

27   been residents and citizens of Lancaster, California.

28

810088.9                                                   CLASS ACTION COMPLAINT

1       4.     Defendant Harley-Davidson, Inc. is a Wisconsin corporation with its

2   principal place of business located in Milwaukee, Wisconsin.

3       5.     Defendant Harley-Davidson Motor Company, Inc. is a Wisconsin

4   corporation with its principal place of business located in Milwaukee, Wisconsin.

5       6.     Defendant Harley-Davidson Financial Services, Inc. is a Delaware

6   corporation with its principal place of business located in Chicago, Illinois.

7                     **JURISDICTION AND VENUE**

8       7.     This Court has original jurisdiction over this action under 28 U.S.C. § 1331

9   because Plaintiffs assert claims arising under Federal law.  This Court has supplemental

10  jurisdiction over the non-Federal claims in this action under 28 U.S.C. § 1367.

11      8.     This Court also has original jurisdiction over the non-Federal claims in this

12  action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in

13  which:  (1) there are 100 or more members in the Proposed Class; (2) at least some members of

14  the Proposed Class have a different citizenship from Harley-Davidson; and (3) the claims of the

15  members of the Proposed Class exceed $5,000,000 in the aggregate.

16      9.     This Court has personal jurisdiction over Harley-Davidson because Harley-

17  Davidson has purposefully availed itself of the privilege of conducting business activities within

18  the State of California by marketing, advertising, and selling the Extended Service Plan to

19  Plaintiffs and members of the Proposed Class, as well as by generally maintaining systematic and

20  continuous business contacts with the State of California.

21      10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a

22  substantial part of the events, misrepresentations, and/or omissions giving rise to Plaintiffs'

23  claims occurred in the Central District when Harley-Davidson marketed, advertised, sold, and/or

24  administered—and Plaintiffs purchased—the Extended Service Plan at issue here.

25                    **FACTUAL ALLEGATIONS**

26                    **The Hornes' Experience**

27      11.    Thomas and Christine Horne own a 2003 Harley-Davidson FLHTCUI,

28  which they purchased on or about July 31, 2002 from Harley-Davidson of Lancaster, California.

1    At the time of purchase, the Hornes also purchased Harley-Davidson's Extended Service Plan,

2    HDM-4770538, at a cost of $1,149.00.

3          12.    At the time the Hornes purchased the Extended Service Plan, Harley-

4    Davidson provided a document identified as "Motorcycle Service Contract – Part I – Proof of

5    Registration" ("Part I"). Part I is a form which the Hornes were required to complete as part of

6    their purchase of the Plan. It does not set forth the terms of the Extended Service Plan, including

7    the exclusion of diagnostic and teardown procedures from coverage. It instead merely references

8    "Part II" of the Motor Service Contract ("Part II"), and states that by signing Part I, the purchaser

9    acknowledges having read Part II. Although Thomas Horne signed Part I, Harley-Davidson did

10   not provide, or offer to provide, at the time of purchase a copy of Part II—the document which

11   actually sets forth the terms of the Extended Service Plan—for the Hornes to review.

12         13.    After Mr. Horne completed Part I, Harley-Davidson did not give or offer to

13   the Hornes a copy of the completed Part I. The only written materials regarding the Plan of

14   which the Hornes were given copies were the actual warranty card itself and the vehicle sales

15   contract. The warranty card also does not provide the terms of the Extended Service Plan. The

16   vehicle sales contract merely references their purchase of the optional Extended Service Plan in a

17   line item and a later section, without providing the terms of the Plan. A copy of the warranty card

18   is attached as Exhibit A, and a copy of the vehicle sales contract is attached as Exhibit B.

19         14.    At the time the Hornes purchased the Extended Service Plan, they were

20   told by their Harley-Davidson dealer that should they experience any repair problems that

21   normally are covered under the original standard warranty, they would only have to pay the $50

22   Deductible under the Extended Service Plan.

23         15.    That statement is consistent with the only publicly available representations

24   about the Extended Service Plan which Plaintiffs have been able to locate, which can be found on

25   Harley-Davidson's website, and which states: **"Locked-in repair costs. All you'll ever pay is**

26   **the $50 deductible for covered repairs per visit, not per repair."** A copy of this statement as

27   it appears on Harley-Davidson's website is attached as Exhibit C.

28

810088.9                                      - 3 -                              CLASS ACTION COMPLAINT

16.     That same website also provides, in a note at the bottom of the page, that: "Restrictions apply.  See actual contract (Part I and Part II) for specific coverages, exclusions and restrictions."  The website does not provide the terms contained in the "actual contract (Part I and Part II)".

17.     The Hornes were not given—nor were they offered copies of—Part II, *i.e.*, the document providing the terms of the Extended Service Plan, either prior to their purchase of the Extended Service Plan or at the time of purchase.  Nor were the terms contained in Part II explained to the Hornes, prior to or at the time of their purchase of the Extended Service Plan.

18.     In fact, after the Hornes were charged repair costs that they reasonably believed to be covered by the Extended Service Plan, they repeatedly requested a copy of Parts I and II from Harley-Davidson over a six-month period in 2008.  Each time, Harley-Davidson failed to provide a copy of Parts I and II to the Hornes.  Only after counsel for the Hornes intervened on their behalf did Harley-Davidson send to the Hornes a copy of Parts I and II.  A copy of Part I is attached as Exhibit D.  A copy of Part II is attached as Exhibit E.

19.     Part II—which the Hornes was *not* provided prior to or at the time they purchased the Extended Service Plan—contains a section that contradicts both what the Hornes were told prior to and at the time of purchase and what Harley-Davidson represents publicly to be the case.  Specifically, in a section entitled "Excess Charges," Part II  provides that the purchaser of the Extended Service Plan is **"responsible for any charges for diagnostic and/or teardown procedures that are not listed, or are in excess of the times listed, in the current year's Harley-Davidson flat-rate hourly labor guide."**

20.     In other words, while the Hornes were promised at the time they purchased their Extended Service Plan (and Harley-Davidson uniformly represents in writing to the public) that they would only have to pay the $50 Deductible under the Plan, Part II—which they were not provided until months after they purchased the Plan, after they were charged more than the $50 Deductible for repairs, and after repeated requests—states that the Hornes instead would be required to pay for diagnostic and teardown procedures required to ascertain the reason for any problems their bike experienced, in excess of the $50 Deductible.

1    21.    Simply put, Harley-Davidson engaged in a classic "bait and switch":  what

2    Harley-Davidson promised the Hornes at the time of sale to induce them to spend $1149.00 to

3    purchase the Extended Service Plan, it excludes in the fine print of Part II, which was not

4    provided to the Hornes prior to or at the time of sale.

5    22.    Moreover, the Hornes were not given—nor were they offered copies of—

6    Harley-Davidson's flat-rate hourly labor guide ("Labor Guide"), either prior to their purchase of

7    the Extended Service Plan or at the time of purchase.  To date, Harley-Davidson has not provided

8    to the Hornes a copy of the Labor Guide.

9    23.    The Hornes experienced multiple failures of their motorcycle between

10   April 2008 (with mileage of approximately 28,000) and January 2009 (with mileage of

11   approximately 37,000).  Each time their motorcycle failed, the Hornes brought it to a Harley-

12   Davidson dealership for repairs.  Notwithstanding their Extended Service Plan and Harley-

13   Davidson's representations that all they would ever be required to pay would be the $50

14   Deductible for each repair visit, Harley-Davidson charged the Hornes "diagnostic" fees to date in

15   the amount of $335.63.

16                              **Harley-Davidson's Misconduct**

17   24.    Based on investigation, including discussion with former authorized

18   Harley-Davidson dealers, the Hornes are informed and believe the following facts concerning

19   Harley-Davidson's misconduct.

20   25.    Harley-Davidson markets, advertises, and sells the Extended Service Plan

21   to customers who purchase Harley-Davidson Motorcycles.

22   26.    The Extended Service Plan is administered by a third-party underwriter

23   ("Underwriter").  Harley-Davidson has authorized the Underwriter and Harley-Davidson's

24   authorized dealers ("Authorized Dealers") to market, advertise, and sell the Plan under the

25   Harley-Davidson brand name.

26   27.    Harley-Davidson receives 2 forms of revenue from the Underwriter for the

27   marketing, advertising, and sale of the Extended Service Plan:  (1) license fees for the use of

28

1    Harley-Davidson's brand name and access to its customers through its Authorized Dealers; and

2    (2) incentive fees that are contingent on the volume of sales of the Extended Service Plan.

3         28.    In marketing, advertising, and selling the Extended Service Plan, Harley-

4    Davidson falsely represented—and continues to falsely represent—in writing that the Plan limits

5    repair costs to the $50 Deductible, which directly contradicts the exclusion of diagnostic and

6    teardown procedures stated in Part II.

7         29.    Harley-Davidson knew, or should have known, that in marketing,

8    advertising, and selling the Extended Service Plan, its Authorized Dealers and the Underwriter

9    falsely represented—and continue to falsely represent—in writing that the Plan limits repair costs

10   to the $50 Deductible, which directly contradicts the exclusion of diagnostic and teardown

11   procedures stated in Part II.

12        30.    Harley-Davidson has failed to—and continues to fail to—provide, or

13   require its Authorized Dealers or the Underwriter to provide, to customers who purchase the

14   Extended Service Plan a copy of Part II, either prior to or at the time of purchase.

15        31.    Harley-Davidson has failed to—and continues to fail to—inform, or

16   require its Authorized Dealers or the Underwriter to inform, customers who purchase the

17   Extended Service Plan that Part II exclude charges for diagnostic and teardown procedures, or

18   that there are no limits to the amounts they can incur for those excluded charges.

19        32.    Harley-Davidson has refused to—and continues to refuse to—honor, or

20   require its Authorized Dealers or the Underwriter to honor, the $50 Deductible, and instead,

21   additional charges beyond the $50 Deductible, specifically charges for diagnostic and teardown

22   procedures, are imposed on Harley-Davidson's customers.

23        33.    Harley-Davidson has failed to—and continues to fail to—disclose, or

24   require its Authorized Dealers or the Underwriter to disclose, to customers who purchase the

25   Extended Service Plan that Harley-Davidson does not honor the $50 Deductible, and instead,

26   additional charges beyond the $50 Deductible, specifically charges for diagnostic and teardown

27   procedures, are imposed on Harley-Davidson's customers.

28

34. Harley-Davidson knew, or should have known, that its Authorized Dealers and the Underwriter fail to provide a copy of Part II, either prior to or at the time of purchase.

35. Harley-Davidson failed to—and continues to fail to—monitor its Authorized Dealers or the Underwriter to ensure that they provide to customers who purchase the Extended Service Plan a copy of Part II, either prior to or at the time of purchase.

36. Harley-Davidson failed to—and continues to fail to—provide disincentives for its Authorized Dealers or the Underwriter's failure to provide a copy of Part II, either prior to or at the time of purchase.

37. Harley-Davidson fraudulently concealed—and continues to fraudulently conceal—from purchasers of the Extended Service Plan that it does not honor the $50 Deductible and instead additionally imposes on Plaintiffs and members of the Proposed Class charges for diagnostic and teardown procedures.

38. Harley-Davidson was—and continues to be—under a duty to Plaintiffs and members of the Proposed Class to provide copies of Part II, in particular the exclusion of charges for diagnostic and teardown procedures.

39. The facts Harley-Davidson concealed or failed to disclose are material facts, *i.e.*, facts that a reasonable person would consider important to the decision to purchase a Extended Service Plan, or how much to pay for the Plan.

40. Harley-Davidson misrepresented and concealed the truth about the Extended Service Plan for the purpose of inducing Plaintiffs and members of the Proposed Class to purchase the Extended Service Plan, and at full price.  Had Harley-Davidson disclosed the truth, Plaintiffs and members of the Proposed Class, as reasonable customers, would not have purchased the Extended Service Plan, or would have paid less for it.

41. Harley-Davidson's false advertising and misrepresentations concerning the $50 Deductible are objectively material to the reasonable consumer, and therefore reliance upon such representations may be presumed as a matter of law.

42. Plaintiffs and members of the Proposed Class reasonably and justifiably acted or relied to their detriment on Harley-Davidson's concealment of, or failure to disclose, the

1    fact that Harley-Davidson does not honor the $50 Deductible and instead additionally impose on

2    Plaintiffs and members of the Proposed Class charges for diagnostic and teardown procedures.

3           43.    As a result of Harley-Davidson's unlawful conduct, Plaintiffs and members

4    of the Proposed Class have incurred significant injury and damages in that they purchased the

5    Extended Service Plan on the reasonable belief that they would be charged no more than the $50

6    Deductible, while in fact Harley-Davidson instead imposes the $50 Deductible *plus* whatever

7    charges are incurred for diagnostic and teardown procedures that are performed as part of the

8    repairs.

9                            **STATUTES OF LIMITATION**

10          44.    **Discovery Rule.** The causes of action alleged herein accrued upon

11   discovery that the Extended Service Plan imposes charges in excess of the $50 Deductible.

12   Because Harley-Davidson represented to Plaintiffs and members of the Proposed Class that the

13   Extended Service Plan limits charges to the $50 Deductible and failed to provide Part II to them,

14   Plaintiffs and members of the Proposed Class did not discover and could not have discovered that

15   the Extended Service Plan excludes charges for diagnostic and teardown procedures until they

16   brought their motorcycles to a dealer for repairs.

17          45.    **Fraudulent Concealment Tolling.**  Any applicable statutes of limitation

18   have been tolled by Harley-Davidson's knowing and active concealment and denial of the facts as

19   alleged herein, which concealment is ongoing.  Plaintiffs and members of the Proposed Class

20   have been kept ignorant by Harley-Davidson of vital information essential to the pursuit of these

21   claims, without any fault or lack of diligence on their part.  Plaintiffs and members of the

22   Proposed Class reasonably relied on misrepresentations by Harley-Davidson that the Extended

23   Service Plan limits charges to the $50 Deductible, and were not provided with copies of Part II.

24   Plaintiffs and members of the Proposed Class therefore could not reasonably have discovered that

25   the Extended Service Plan excludes charges for diagnostic and teardown procedures.

26          46.    **Estoppel.**  Harley-Davidson was and is under a continuous duty to disclose

27   to the Plaintiffs and members of the Proposed Class the complete terms of the Extended Service

28   Plan.  Harley-Davidson knowingly and affirmatively misrepresented and actively concealed the

1    terms of the Extended Service Plan, specifically the exclusion of charges for diagnostic and

2    teardown procedures.  Plaintiffs reasonably relied upon Harley-Davidson's knowing and

3    affirmative misrepresentations and/or active concealment.  Based on the foregoing, Harley-

4    Davidson is estopped from relying on any statutes of limitation in defense of this action.

5                                    **CHOICE OF LAW**

6            47.    Federal law applies to the Nationwide Class with respect to the claims

7    brought pursuant to the Magnuson-Moss Act—Federal Trade Commission Improvement Act, 15

8    U.S.C. §§ 2301, *et seq.* ("Magnuson-Moss Act").

9            48.    California law applies to all non-Federal claims asserted by Plaintiffs and

10   the California Sub-Class.  California's substantive laws may be constitutionally applied to the

11   claims of Plaintiffs and members of the California Sub-Class under the Due Process Clause, 14th

12   Amendment, § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution.

13   California has a significant contact, or significant aggregation of contacts, to the claims asserted

14   by Plaintiffs and members of the California Sub-Class, thereby creating state interests that ensure

15   that the choice of California state law is not arbitrary or unfair.

16           49.    The application of California's laws to Plaintiffs and members of the

17   California Sub-Class also is appropriate under California's choice of law rules.  California has a

18   materially greater interest than any other State in enforcing the rights and remedies granted to

19   Plaintiffs and members of the California Sub-Class under the California laws invoked in this

20   Complaint.  These rights and remedies further strong fundamental public policies of the State of

21   California.

22           50.    Harley-Davidson marketed, advertised, and sold the Extended Service Plan

23   to members of the California Sub-Class.  Harley-Davidson owns property, advertises, operates

24   dealerships, conducts substantial business, and profits from its activities in California.  California

25   therefore has the greatest interest in regulating Harley-Davidson's conduct towards Plaintiffs and

26   members of the California Sub-Class under California's laws.

27           51.    California law applies to the unjust enrichment claims asserted by Plaintiffs

28   and the Nationwide Class.  California's substantive laws may be constitutionally applied to the

1   claims of Plaintiffs and members of the Nationwide Class under the Due Process Clause, 14th

2   Amendment, § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution.

3   California has a significant contact, or significant aggregation of contacts, to the claims asserted

4   by Plaintiffs and members of the Nationwide Class, thereby creating state interests that ensure

5   that the choice of California state law is not arbitrary or unfair.

6           52.     The application of California's laws to the unjust enrichment claims

7   asserted by Plaintiffs and the Nationwide Class also is appropriate under California's choice of

8   law rules.  There are no material differences between California's law with respect to unjust

9   enrichment and the laws of the other States included in the Nationwide Class, and therefore no

10   actual conflict exists between the States' laws.

11                          **CLASS ACTION ALLEGATIONS**

12           53.     Plaintiffs bring this lawsuit as a class action on behalf of themselves and all

13   others similarly situated as members of the following Proposed Class pursuant to Federal Rule of

14   Civil Procedure 23:

15                          Nationwide Class

16           All persons who are residents of the United States and purchased an
        extended service contract from Harley-Davidson, Inc., Harley-
17        Davidson Motor Company, Inc., or Harley-Davidson Financial
        Services, Inc. ("Harley-Davidson").  Excluded from the Nationwide
18        Class are:  (1) Harley-Davidson, any entity in which Harley-
        Davidson has a controlling interest, and its legal representatives,
19        officers, directors, employees, assigns, and successors; (2) the
        Judge to whom this case is assigned and any member of the Judge's
20        immediate family; and (3) claims for personal injury, wrongful
        death, and/or emotional distress.
21

22                          California Sub-Class

23           All persons who are residents of California and purchased an
        extended service contract from Harley-Davidson, Inc., Harley-
24        Davidson Motor Company, Inc., or Harley-Davidson Financial
        Services, Inc. ("Harley-Davidson").  Excluded from the California
25        Sub-Class are:  (1) Harley-Davidson, any entity in which Harley-
        Davidson has a controlling interest, and its legal representatives,
26        officers, directors, employees, assigns, and successors; (2) the
        Judge to whom this case is assigned and any member of the Judge's
27        immediate family; and (3) claims for personal injury, wrongful
        death, and/or emotional distress.

28

54.     Plaintiffs assert their Magnuson-Moss Act and unjust enrichment claims on behalf of the Nationwide Class.  Plaintiffs assert their remaining claims—each of which is based on California law—on behalf of the California Sub-Class only.

55.     This action satisfies the ascertainability, numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Fed. Civ. P. 23(a) and (b)(3).

### Numerosity & Ascertainability

56.     On information and belief, the California Sub-Class comprises thousands of individuals who purchased the Extended Service Plan throughout the State of California, making joinder impractical.

57.     On information and belief, the Nationwide Class comprises tens of thousands of individuals who purchased the Extended Service Plan throughout the United States, making joinder impractical.

58.     The Proposed Class is composed of easily ascertainable, self-identifying sets of individuals who purchased the Extended Service Plan.

### Typicality

59.     The claims of the named Plaintiffs are typical of the claims of members of the Proposed Class, in that the named Plaintiffs, like all members of the Proposed Class, have purchased and are covered by the Extended Service Plan.  The factual bases of Harley-Davidson's misconduct are common to all members of the Proposed Class and represent a common thread of unlawful conduct resulting in injury to all members of the Proposed Class.

### Adequacy

60.     Plaintiffs will fairly and adequately represent and protect the interests of the Proposed Class.  Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving consumer fraud.

61.     Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Proposed Class, and have the financial resources to do so.  Neither Plaintiffs nor their Counsel have interests adverse to those of members of the Proposed Class.

**Predominance of Common Issues**

62.     There are numerous questions of law and fact common to all members of the Proposed Class, and those questions predominate over any questions that may affect only individual members of the Proposed Class.  The predominant common questions include, but are not limited to, the following:

a.      Whether Harley-Davidson falsely advertised and misrepresented to Plaintiffs and members of the Proposed Class that under the Extended Service Plan, they would pay no more than the $50 Deductible for each repair visit;

b.      Whether Harley-Davidson failed to fully and conspicuously disclose in simple and readily understood language the terms and conditions of the Extended Service Plan, specifically the exclusion of charges for diagnostic and teardown procedures from coverage;

c.      Whether Harley-Davidson failed to make available to Plaintiffs and members of the Proposed Class, prior to or at the time of the sale of the Extended Service Plan to them, the terms of the Extended Service Plan, specifically the exclusion of charges for diagnostic and teardown procedures from coverage;

d.      Whether Harley-Davidson, as a matter of company policy, fraudulently concealed or failed to disclose Part II from Plaintiffs and members of the Proposed Class;

e.      Whether Harley-Davidson, as a matter of company practice, fraudulently concealed or failed to disclose Part II from Plaintiffs and members of the Proposed Class;

f.      Whether Harley-Davidson, as a matter of company policy, fraudulently concealed or failed to disclose to Plaintiffs and members of the Proposed Class that the Extended Service Plan excludes charges for diagnostic and teardown procedures, or that there are no limits to the amount for those excluded charges;

g.      Whether Harley-Davidson, as a matter of company practice, fraudulently concealed or failed to disclose to Plaintiffs and members of the Proposed Class that

1    the Extended Service Plan excludes charges for diagnostic and teardown procedures, or that there

2    are no limits to the amount for those excluded charges;

3            h.      Whether the exclusion of charges for diagnostic and teardown

4    procedures is a material fact which reasonable purchasers would have considered in deciding

5    whether to purchase the Extended Service Plan, or what price to pay for the Plan;

6            i.      Whether Harley-Davidson had a duty to Plaintiffs and members of

7    the Proposed Class to disclose the exclusion of charges for diagnostic and teardown procedures;

8            j.      Whether Harley-Davidson's misrepresentations and omissions

9    concerning the Extended Service Plan induced Plaintiffs and members of the Proposed Class to

10   act to their detriment by purchasing the Plan, at the price which they paid;

11           k.      Whether Harley-Davidson's concealment and failure to disclose the

12   exclusion of charges for diagnostic and teardown procedures violated the Magnuson-Moss Act;

13           l.      Whether Harley-Davidson's concealment and failure to disclose the

14   exclusion of charges for diagnostic and teardown procedures violated the Song-Beverly

15   Consumer Warranty Act, California Civil Code §§ 1790, *et seq.* ("Song-Beverly Act");

16           m.      Whether Harley-Davidson represented, through its words and

17   conduct, that the Extended Service Plan had characteristics, uses, or benefits that it did not

18   actually have, in violation of the California Consumer Legal Remedies Act, Civ. Code §§ 1750, *et*

19   *seq.* ("CLRA");

20           n.      Whether Harley-Davidson advertised the Extended Service Plan

21   with the intent not to sell them as advertised, in violation of the CLRA;

22           o.      Whether Harley-Davidson represented that the purchase of the

23   Extended Service Plan confers or results in rights, remedies, or obligations which it does not

24   involve, in violation of the CLRA;

25           p.      Whether Harley-Davidson represented that the service coverage

26   which Harley-Davidson represented would be supplied actually was not supplied, in violation of

27   the CLRA;

28

810088.9                              - 13 -                          CLASS ACTION COMPLAINT

1        q.     Whether Harley-Davidson inserted an unconscionable provision in

2  the contract for the Extended Service Plan, in violation of the CLRA;

3        r.     Whether Harley-Davidson intentionally misrepresented facts to

4  Plaintiffs and members of the California Sub-Class in violation of California Civil Code § 1710;

5        s.     Whether Harley-Davidson fraudulent concealed or failed to disclose

6  material facts to the Plaintiffs and members of the California Sub-Class in violation of California

7  Civil Code § 1710;

8        t.     Whether Harley-Davidson made a false promise to Plaintiffs and

9  members of the California Sub-Class in violation of California Civil Code § 1710;

10        u.     Whether Harley-Davidson's affirmative misrepresentations about

11  the true nature of the Extended Service Plan were likely to mislead or deceive, and therefore

12  fraudulent, within the meaning of California Business and Professions Code § 17200;

13        v.     Whether Harley-Davidson's affirmative misrepresentations about

14  the true nature of the Extended Service Plan were and are unfair within the meaning of the

15  California Business and Professions Code § 17200;

16        w.     Whether Harley-Davidson's marketing, advertising, and other

17  express representations that the Extended Service Plan had certain characteristics violated the

18  California Business and Professions Code § 17500;

19        x.     Whether Harley-Davidson fraudulently induced Plaintiffs and

20  members of the California Sub-Class to purchase the Extended Service Plan by fraudulently

21  concealing and failing to disclose the exclusion of charges for diagnostic and teardown

22  procedures;

23        y.     Whether Harley-Davidson promised to charge Plaintiffs and

24  members of the California Sub-Class no more than the $50 Deductible for each repair visit;

25        z.     Whether Harley-Davidson failed to perform on its promise to

26  Plaintiffs and members of the California Sub-Class that they would be charged no more than the

27  $50 Deductible for each repair visit;

28        aa.     Whether Harley-Davidson was unjustly enriched by its misconduct;

1            bb.     Whether Plaintiffs and members of the Proposed Class are entitled

2    to compensatory damages, and, if so, the amount of such damages;

3            cc.     Whether, as a result of Harley-Davidson's unlawful conduct,

4    Plaintiffs and members of the Proposed Class are entitled to civil penalties and/or punitive

5    damages, and, if so, the amount of such penalties and/or damages;

6            dd.     Whether Harley-Davidson should be enjoined from engaging in the

7    methods, acts, or practices alleged herein; and

8            ee.     Whether Harley-Davidson should be ordered to disgorge, for the

9    benefit of the Proposed Class, all or part of its ill-gotten profits received from the sale of the

10   Extended Service Plan.

**Superiority**

12       63.    Absent class treatment, Plaintiffs and members of the Proposed Class will

13   continue to suffer harm and damages as a result of Harley-Davidson's unlawful and wrongful

14   conduct.

15       64.    A class action is superior to all other available methods for the fair and

16   efficient adjudication of this controversy.  Without a class action, individual members of the

17   Proposed Class would face burdensome litigation expenses, deterring them from bringing suit or

18   adequately protecting their rights.  Because of the relatively modest economic value of the claims

19   by the individual members of the Proposed Class, few could likely seek their rightful legal

20   recourse.  Absent a class action, members of the Proposed Class would continue to suffer harm

21   without remedy, while Harley-Davidson would continue to reap the benefits of their misconduct.

22       65.    The consideration of common questions of fact and law will conserve

23   judicial resources and promote a fair and consistent resolution of these claims.

**FIRST CAUSE OF ACTION**
**Violations of Magnuson-Moss Act, 15 U.S.C. §§ 2301, *et seq.***
**(On Behalf of the Nationwide Class)**

26       66.    Plaintiffs and the Nationwide Class reallege and incorporate, as if fully

27   alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint,

28   and further allege as follows.

67.     The Motorcycles for which Plaintiffs and members of the Nationwide Class purchased the Extended Service Plan are "consumer products" as that term is defined by 15 U.S.C. § 2301(1).

68.     Plaintiffs and members of the Nationwide Class are "consumers" as that term is defined by 15 U.S.C. § 2301(3).

69.     Harley-Davidson is a "warrantor" and "supplier" as those terms are defined by 15 U.S.C. § 2301(4) and (5).

70.     Harley-Davidson provided Plaintiffs and members of the Nationwide Class with "written warranties" as that term is defined by 15 U.S.C. § 2301(6).

71.     Harley-Davidson violated the Magnuson-Moss Act by its fraudulent concealment from and/or intentional failure to disclose to Plaintiffs and members of the Nationwide Class that Part II excludes charges for diagnostic and teardown procedures from coverage under the Extended Services Plan, and that Harley-Davidson does not honor the $50 Deductible.

72.     Specifically, Harley-Davidson's concealment and failure to disclose violated (a) § 2302(a)'s requirement that a warrantor warranting a consumer product to consumer by means of a written warranty shall fully and conspicuously disclose in simple and readily understood language the terms and conditions of such warranty; (b) § 2302(b)(1)(A)'s requirement that the terms of any written warranty on a consumer product be made available to the consumer (or prospective consumer) prior to the sale of the product to him; and (c) § 2306(b)'s requirement that a service contract with the consumer fully, clearly, and conspicuously discloses its terms and conditions in simple and readily understood language.

73.     Harley-Davidson failed to disclose to Plaintiffs and members of the Nationwide Class Part II's exclusion of charges for diagnostic or teardown procedures from coverage under the Extended Service Plan, even as it sought to enforce the terms contained therein as the applicable warranty.

74.     As a direct and proximate cause of Harley-Davidson's misconduct, Plaintiffs and members of the Nationwide Class have suffered actual damages in that they

1  purchased the Extended Service Plan, which resulted in charges in excess of the $50 Deductible,

2  and paid a higher price for the Plan than they would have paid if Harley-Davidson had disclosed

3  the exclusion of charges for diagnostic and teardown procedures.

4         75.    As a result of Harley-Davidson's violation of the Magnuson-Moss Act,

5  Plaintiffs and members of Nationwide Class are entitled to damages, other legal and equitable

6  relief, costs, expenses, and attorneys' fees pursuant to 15 U.S.C. § 2310(d).

7  <div align="center">**SECOND CAUSE OF ACTION**</div>

<div align="center">**Violations of the Song-Beverly Consumer Warranty Act,**</div>

8  <div align="center">**Cal. Civ. Code §§ 1790, *et seq.***</div>

<div align="center">**(On Behalf of the California Sub-Class)**</div>

9

10         76.    Plaintiffs and the California Sub-Class reallege and incorporate, as if fully

11  alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint,

12  and further allege as follows.

13         77.    The Motorcycles for which Plaintiffs and members of the California Sub-

14  Class purchased the Extended Service Plan are "consumer products" as that term is defined by

15  Cal. Civ. Code § 1791(a).

16         78.    Plaintiffs and members of the California Sub-Class are "buyer[s]" as that

17  term is defined by Cal. Civ. Code § 1791(b).

18         79.    Harley-Davidson is a "manufacturer," "distributor," and "seller" as those

19  terms are defined by Cal Civ. Code § 1791(e), (j), and (l).

20         80.    Harley-Davidson violated the Song-Beverly Act by its fraudulent

21  concealment from and/or intentional failure to disclose to Plaintiffs and members of the

22  California Sub-Class that Part II excludes charges for diagnostic or teardown procedures from

23  coverage under the Extended Services Plan, and that Harley-Davidson does not honor the $50

24  Deductible.

25         81.    Specifically, Harley-Davidson's concealment and failure to disclose

26  violated § 1793.1's requirement that every manufacturer, distributor, or retailer making express

27  warranties with respect to consumer goods shall fully set forth the terms of those warranties in

28  simple and readily understood language.

1    82.    Harley-Davidson failed to disclose to Plaintiffs and members of the

2    California Sub-Class Part II's exclusion of charges for diagnostic or teardown procedures from

3    coverage under the Extended Service Plan, even as its seeks to enforce the terms contained

4    therein as the applicable warranty.

5    83.    As a direct and proximate cause of Harley-Davidson's misconduct,

6    Plaintiffs and members of the California Sub-Class have suffered actual damages in that they

7    purchased the Extended Service Plan, which resulted in charges in excess of the $50 Deductible,

8    and paid a higher price for the Plan than they would have paid if Harley-Davidson had disclosed

9    the exclusion of charges for diagnostic and teardown procedures.

10    84.    As a result of Harley-Davidson's violation of the Song-Beverly Act,

11    Plaintiffs and members of the California Sub-Class are entitled to damages, other legal and

12    equitable relief, costs, expenses, and attorneys' fees pursuant to Cal. Civ. Code § 1794.

13    85.    Harley-Davidson's unlawful conduct was willful, and it therefore also is

14    subject to civil penalties pursuant to Cal. Civ. Code § 1794.

15    **THIRD CAUSE OF ACTION**
**Violation of the California Consumer Legal Remedies Act,**
16    **Civ. Code §§ 1750, *et seq*. ("CLRA")**
**(On Behalf of the California Sub-Class)**
17

18    86.    Plaintiffs and the California Sub-Class reallege and incorporate, as if fully

19    alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint,

20    and further allege as follows.

21    87.    Harley-Davidson is a "person" as defined by Civil Code § 1761(c).

22    88.    Plaintiffs and members of the California Sub-Class are "consumers" within

23    the meaning of Civil Code § 1761(d).

24    89.    The Extended Service Plan is a "service[]" within the meaning of Civil

25    Code § 1761(a).

26    90.    Harley-Davidson violated the CLRA by affirmatively misrepresenting to

27    Plaintiffs and members of the California Sub-Class prior to and at the time of purchase that under

28    the Extended Service Plan, they would not be charged more than the $50 Deductible, while in fact

1    the Plan, as provided by Part II and administered by Harley-Davidson, instead imposes additional

2    charges beyond the $50 Deductible, specifically charges for diagnostic and teardown procedures.

3          91.    Specifically, Harley-Davidson's misrepresentation of material facts

4    regarding the Extended Service Plan's $50 Deductible violated (a) § 1770(a)(5)'s proscription

5    against representing that goods or services have uses or characteristics they do not actually have;

6    (b) § 1770(a)(9)'s proscription against advertising goods or services with the intent not to sell

7    them as advertised; (c) 1770(a)(14)'s proscription against representing that a transaction confers

8    or involves rights, remedies, or obligations which it does not have or involve; (d) 1770(a)(16)'s

9    proscription against representing that the subject of the transaction has been supplied in

10   accordance with a previous representation when it has not; and (e) 1770(a)(19)'s proscription

11   against the insertion of an unconscionable provision in the contract.

12         92.    Had Plaintiffs and members of the California Sub-Class known the truth

13   about Part II's exclusion of charges for diagnostic and teardown procedures from coverage under

14   the Extended Service Plan, they would not have purchased the Plan, or would have paid less for

15   them.

16         93.    Harley-Davidson intended for consumers to rely on its misrepresentations

17   regarding the Extended Service Plan's $50 Deductible.  Harley-Davidson knew that the $50

18   Deductible was attractive to customers because it provided certainty and limited their future

19   exposure to unknown future repair costs, and therefore would induce customers to purchase the

20   Plan.

21         94.    As a direct and proximate cause of Harley-Davidson's misconduct,

22   Plaintiffs and members of the California Sub-Class have suffered actual damages in that they

23   purchased the Extended Service Plan, which resulted in charges in excess of the $50 Deductible,

24   and paid a higher price for the Plan than they would have paid if Harley-Davidson had disclosed

25   the exclusion of charges for diagnostic and teardown procedures.

26         95.    Plaintiffs, on behalf of themselves and for all those similarly situated,

27   demand judgment against Harley-Davidson under the CLRA for injunctive relief in the form of

28   restitution and/or proportional disgorgement of funds paid to Harley-Davidson to purchase the

1  Extended Service Plan, an injunction requiring Harley-Davidson to cease making representations

2  that the Extended Service Plan does not require payments in excess of the $50 Deductible, and an

3  award of attorneys' fees pursuant to Civil Code § 1780(d).  Plaintiffs seek this injunctive relief for

4  Harley-Davidson's violations of CLRA §§ 1770(a)(5), (9), (14), (16) and (19).

5          96.      In accordance with section 1782(a) of the CLRA, Civ. Code § 1782(a), on

6  March 3, 2009, Plaintiffs' counsel, on behalf of the Hornes, served Harley-Davidson, by certified

7  mail, return receipt requested, with notice of its alleged violations of CLRA §§ 1770(a)(5), (9),

8  (14), (16), and (19) relating to the Extended Service Plan purchased by the Hornes.  A copy of

9  this notice is attached hereto as Exhibit F.

10          97.      Notwithstanding Plaintiffs' demand that Harley-Davidson cease its

11  violations of the CLRA, provide copies of Part II to purchasers of the Extended Service Plan, and

12  compensate them for the overpayment which they made in purchasing the Plan, Harley-Davidson

13  has not satisfied, or agreed to satisfy within a reasonable time, the demands which Plaintiffs have

14  made within 30 days after receipt of the notice.  Thus, Plaintiffs and members of the California

15  Sub-Class are entitled to seek and recover actual damages, punitive damages, attorneys' fees and

16  costs, and any other relief which this Court deems proper against the Harley-Davidson.

17                          **FOURTH CAUSE OF ACTION**
                    **Violation of California Civil Code § 1710,**
18                          **Deceit and Common Law Fraud**
                     **(On Behalf of the California Sub-Class)**
19

20          98.      Plaintiffs and the California Sub-Class reallege and incorporate, as if fully

21  alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint,

22  and further allege as follows.

23          99.      Pursuant to California Civil Code § 1710, deceit is either (1) the

24  suggestion, as a fact, of that which is not true, by one who does not believe it to be true; (2) the

25  assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it

26  to be true; (3) the suppression of a fact, by one who is bound to disclose it, or who gives

27  information of other facts which are likely to mislead for want of communication of that fact; or

28

810088.9                              - 20 -                    CLASS ACTION COMPLAINT

1   (4) a promise, made without any intention of performing it.  Harley-Davidson's actions constitute

2   deceit under prongs (1), (3), and (4).

3   **Deceit Based on Intentional Misrepresentation**

4        100.   Plaintiffs and the California Sub-Class reallege and incorporate, as if fully

5   alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint,

6   and further allege as follows.

7        101.   Harley-Davidson knowingly made uniform misrepresentations to

8   consumers, including Plaintiffs and members of the California Sub-Class, that the Extended

9   Service Plan had a $50 Deductible when in fact, as provided by Part II and administered by

10  Harley-Davidson, it does not.

11       102.   Harley-Davidson knew that its representations were untrue.  Harley-

12  Davidson had actual knowledge of the fact that the Extended Service Plan excludes charges for

13  diagnostic and teardown procedures.

14       103.   Harley-Davidson intended for consumers to rely on its representations

15  regarding the Extended Service Plan's $50 Deductible.  Harley-Davidson knew that the $50

16  Deductible was attractive to customers because it provided certainty and limited their future

17  exposure to unknown future repair costs, and therefore would induce customers to purchase the

18  Plan.

19       104.   Plaintiffs and members of the California Sub-Class were unaware of the

20  fact that the Extended Service Plan excluded charges for diagnostic and teardown procedures

21  from coverage, or that they would be charged in excess of the $50 Deductible.

22       105.   Plaintiffs and members of the California Sub-Class have been proximately

23  damaged as a result of their reliance on Harley-Davidson's misrepresentations in that they

24  purchased the Extended Service Plan which, as provided by Part II and administered by Harley-

25  Davidson, does not limit payments to the $50 Deductible and instead additionally imposes on

26  them charges for diagnostic and teardown procedures.

27       106.   The $50 Deductible was a primary selling point of the Extended Service

28  Plan.  Had Plaintiffs and members of the California Sub-Class known that the Extended Service

1    Plan, as provided by Part II and administered by Harley-Davidson, would result in charges in

2    excess of the $50 Deductible, they would not have purchased the Plan, or would have paid less

3    for it.

**Deceit Based on Fraudulent Concealment/Nondisclosure**

5        107.    Plaintiffs and the California Sub-Class reallege and incorporate, as if fully

6    alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint,

7    and further allege as follows.

8        108.    Under California law, a duty to disclose arises in four circumstances:

9    (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant has

10   exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively

11   conceals a material fact from the plaintiffs; and (4) when the defendant makes partial

12   representations but also suppresses some material facts.  Pursuant to prongs (2), (3), and (4),

13   Harley-Davidson had a duty to disclose the exclusion of charges for diagnostic and teardown

14   procedures from coverage under the Extended Service Plan.

15       109.    Harley-Davidson had and has a duty to disclose material facts about the

16   Extended Service Plan because Harley-Davidson had exclusive knowledge that Part II excludes

17   charges for diagnostic or teardown procedures from coverage under the Extended Service Plan,

18   and that Harley-Davidson would not honor the $50 Deductible.  Plaintiffs and members of the

19   California Sub-Class, in the exercise of reasonable diligence, could not have discovered the

20   exclusion of charges for diagnostic or teardown procedures, or Harley-Davidson's intent to not

21   honor the $50 Deductible.

22       110.    Harley-Davidson had and has a duty to disclose material facts about the

23   Extended Service Plan because Harley-Davidson undertook active steps to conceal them.  Prior to

24   and at the time of purchase, Plaintiffs and members of the California Sub-Class were not aware of

25   anything in Harley-Davidson's advertising, marketing, or sales materials that discloses Part II's

26   exclusion of charges for diagnostic or teardown procedures from coverage under the Extended

27   Service Plan.  Harley-Davidson concealed from Plaintiffs and members of the California Sub-

28   Class the exclusion of charges for diagnostic and teardown procedures from coverage under the

1    Extended Service Plan, even as Harley-Davidson knew or should have known that the exclusion

2    contradicted its representations concerning the $50 Deductible.

3         111.    Harley-Davidson had and has a duty to disclose material facts about the

4    Extended Service Plan because Harley-Davidson made and makes partial representations about

5    the Extended Service Plan but also suppress some material facts.  These partial representations

6    give rise to a duty to disclose the full story—that the Extended Service Plan, as provided by Part

7    II and administered by Harley-Davidson, does not cover charges for diagnostic or teardown

8    procedures, and instead results in charges in excess of the $50 Deductible, despite Harley-

9    Davidson's misrepresentations to the contrary.

10        112.    Harley-Davidson fraudulently concealed from and/or intentionally failed to

11   disclose to Plaintiffs and members of the California Sub-Class that Part II excludes charges for

12   diagnostic and teardown procedures from coverage under the Extended Services Plan.

13        113.    Harley-Davidson fraudulently concealed from and/or intentionally failed to

14   disclose to Plaintiffs and members of the California Sub-Class that Harley-Davidson would not

15   honor the $50 Deductible.

16        114.    The facts concealed and/or not disclosed by Harley-Davidson to Plaintiffs

17   and members of the California Sub-Class are material facts in that a reasonable person would

18   have considered them important in deciding whether or not to purchase (or to pay the same price

19   for) an Extended Service Plan.

20        115.    Harley-Davidson intentionally concealed and/or failed to disclose the

21   exclusion of charges for diagnostic or teardown procedures from coverage under the Extended

22   Service Plan for the purpose of inducing Plaintiffs and members of the California Sub-Class to act

23   thereon.

24        116.    Plaintiffs and members of the California Sub-Class justifiably acted or

25   relied to their detriment upon the concealed and/or non-disclosed facts as evidenced by their

26   purchase of the Extended Service Plan, and at the price which they paid.

27        117.    Had Plaintiffs and members of the California Sub-Class known that the

28   Extended Service Plan, as provided by Part II and administered by Harley-Davidson, would not

1   extend to charges for diagnostic and teardown procedures, and therefore would result in charges

2   in excess of the $50 Deductible, they would not have purchased (or would have paid less for)

3   their Extended Service Plan.

4                              **Deceit Based on a False Promise**

5          118.   Plaintiffs and the California Sub-Class reallege and incorporate, as if fully

6   alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint,

7   and further allege as follows.

8          119.   Harley-Davidson promised Plaintiffs and members of the California Sub-

9   Class that under the Extended Service Plan, they would not be charged more than the $50

10  Deductible for each repair visit.

11         120.   Harley-Davidson knew that its promise was false. Harley-Davidson had

12  actual knowledge of the fact that the Extended Service Plan excludes charges for diagnostic and

13  teardown procedures.

14         121.   Harley-Davidson made its promise without any intention of performing it.

15         122.   Harley-Davidson intended for consumers to rely on its false promise

16  regarding the Extended Service Plan's $50 Deductible. Harley-Davidson knew that the $50

17  Deductible was attractive to customers because it provided certainty and limited their future

18  exposure to unknown future repair costs, and therefore would induce customers to purchase the

19  Plan.

20         123.   Plaintiffs and members of the California Sub-Class reasonably relied on the

21  promise that they would not be charged more than the $50 Deductible for each repair visit.

22         124.   Plaintiffs and members of the California Sub-Class have been proximately

23  damaged as a result of their reliance on Harley-Davidson's false promise in that they purchased

24  the Extended Service Plan which, as provided by Part II and administered by Harley-Davidson,

25  does not limit payments to the $50 Deductible and instead additionally imposes on them charges

26  for diagnostic or teardown procedures.

27         125.   The $50 Deductible was a primary selling point of the Extended Service

28  Plan. Had Plaintiffs and members of the California Sub-Class known that the Extended Service

1  Plan, as provided by Part II and administered by Harley-Davidson, would result in charges in

2  excess of the $50 Deductible, they would not have purchased the Plan, or would have paid less

3  for them.

4  126.   As a direct and proximate cause of Harley-Davidson's misconduct,

5  Plaintiffs and members of the California Sub-Class have suffered actual damages in that they

6  purchased the Extended Service Plan, which resulted in charges in excess of the $50 Deductible,

7  and paid a higher price for the Plan than they would have paid if Harley-Davidson had disclosed

8  the exclusion of charges for diagnostic and teardown procedures.

9  127.   Harley-Davidson's conduct has been and is wanton and/or reckless and/or

10  shows a reckless indifference to the interests of others.

11  128.   Harley-Davidson have acted with "malice" as that term is defined in Civ.

12  Code § 3294(c)(1) by engaging in conduct that was and is intended by Harley-Davidson to cause

13  injury to the Plaintiffs and members of the California Sub-Class.

14  129.   Harley-Davidson has committed "fraud" as that term is defined in Civ.

15  Code § 3294(c)(3) through its concealment of material facts known to Harley-Davidson with the

16  intent to cause injury to the Plaintiffs and members of the California Sub-Class.

17  130.   Plaintiffs, on behalf of themselves and all others similarly situated,

18  demands judgment against Harley-Davidson for actual and punitive damages in accordance with

19  Civ. Code § 3294(a) for themselves and each member of the California Sub-Class, plus attorneys'

20  fees for the establishment of a common fund, interest, and costs.

21  **FIFTH CAUSE OF ACTION**
**Violation of California Bus. & Prof. Code §§ 17200 & 17500**

22  **(the "Unfair Business Practices Act")**
**(On Behalf of the California Sub-Class)**

23

24  131.   Plaintiffs and the California Sub-Class reallege and incorporate, as if fully

25  alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint,

26  and further allege as follows.

27  132.   The California Business & Professions Code § 17200 prohibits acts of

28  "unfair competition." As used in this section, "unfair competition" encompasses three distinct

types of misconduct:  (a) "unlawful . . . business acts or practices;" (b) "unfair or fraudulent business acts or practices;" and (c) "unfair, deceptive or misleading advertising."

133.    Harley-Davidson violated the Unfair Business Practices Act, Business and Professions Code §§ 17200 and 17500, by engaging in conduct that violated each of the three prongs identified by the statute and outlined in Paragraph 132, above.

134.    Harley-Davidson committed an *unlawful* business act or practice in violation of the Unfair Business Practices Act, Business and Professions Code § 17200, when it violated the Magnuson-Moss Act, as alleged in Paragraphs 66–75, above.

135.    Harley-Davidson committed an *unlawful* business act or practice in violation of the Unfair Business Practices Act, Business and Professions Code § 17200, when it violated the Song-Beverly Act, as alleged in Paragraphs 76–85, above.

136.    Harley-Davidson committed an *unlawful* business act or practice in violation of the Unfair Business Practices Act, Business and Professions Code § 17200, when it violated the CLRA, as alleged in Paragraphs 86–97, above.

137.    Harley-Davidson committed an *unlawful* business act or practice in violation of the Unfair Business Practices Act, Business and Professions Code § 17200, when it violated Cal. Civil Code §§ 1710, *et seq.*, as alleged in Paragraphs 98–130, above.

138.    Harley-Davidson committed *unfair and fraudulent* business acts and practices in violation of the Unfair Business Practices Act, Business and Professions Code §§ 17200 and 17500, when it affirmatively misrepresented, actively concealed, and/or failed to disclose the exclusion of charges for diagnostic or teardown procedures from coverage under the Extended Service Plan in advertising, marketing, and other broadly disseminated representations in a manner likely to deceive the public.

139.    Harley-Davidson committed *unfair and fraudulent* business acts and practices in violation of the Unfair Business Practices Act, Business and Professions Code §§ 17200 and 17500, when it refused to honor the $50 Deductible and instead imposed additional charges beyond the $50 Deductible, specifically charges for diagnostic or teardown procedures.

140.    Harley-Davidson disseminated *unfair, deceptive, untrue and/or misleading advertising* in violation of the Unfair Business Practices Act, Business & Professions Code §§ 17200 and 17500, when it stated in its marketing, advertising, and other broadly disseminated representations that the Extended Service Plan had a $50 Deductible when, in fact, as provided by Part II and administered by Harley-Davidson, it does not.  These misrepresentations are likely to deceive the public.

141.    Harley-Davidson's deceptive practices were specifically designed to and did induce Plaintiffs and members of the California Sub-Class to purchase Extended Service Plan.

142.    Harley-Davidson's deceptive practices have deceived and/or are likely to deceive Plaintiffs, members of the California Sub-Class, and members of the consuming public.

143.    To this day, Harley-Davidson continues to violate the Unfair Business Practices Act by continuing to actively misrepresent and conceal the complete terms of the Extended Service Plan.

144.    As a direct and proximate cause of Harley-Davidson's violation of the Unfair Business Practices Act, Plaintiffs and members of the California Sub-Class have suffered harm in that they purchased the Extended Service Plan which, as provided by Part II and administered by Harley-Davidson, does not limit payments to the $50 Deductible and instead additionally imposes on them charges for diagnostic and teardown procedures.

145.    As a direct and proximate result of Harley-Davidson's violation of the Business and Professions Code § 17200, Harley-Davidson has been unjustly enriched and should be required to make restitution to Plaintiffs and members of the California Sub-Class, or disgorge its ill-gotten profits pursuant to Business & Professions Code § 17203.

146.    Plaintiffs, on behalf of themselves and for all others similarly situated, demand judgment against Harley-Davidson for injunctive relief in the form of restitution, and/or disgorgement of funds paid to Harley-Davidson to purchase the Extended Service Plan, and/or injunctive relief in the form of replacing the Extended Service Plan with a service plan that provides the promised coverage, including the $50 Deductible, as well as attorneys' fees, costs, and interest.

## SIXTH CAUSE OF ACTION
### Fraudulent Inducement
### (On Behalf of the California Sub-Class)

147.    Plaintiffs and the California Sub-Class reallege and incorporate, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further allege as follows.

148.    Harley-Davidson intentionally concealed the true nature of its Extended Service Plan.

149.    Harley-Davidson represented to Plaintiffs and members of the California Sub-Class that under the Extended Service Plan, they would pay no more than the $50 Deductible.

150.    Harley-Davidson knew and concealed the fact that its Extended Service Plan excluded charges for diagnostic and teardown procedures from coverage.

151.    Harley-Davidson knew and concealed the fact that its Extended Service Plan did not limit how much Plaintiffs and members of the California Sub-Class could be charged for excluded diagnostic and teardown procedures under its undisclosed exclusion.

152.    These facts were material to the transaction between Harley-Davidson and the Plaintiffs and members of the California Sub-Class, in that they were likely to induce a reasonable person, and did induce Plaintiffs and members of the California Sub-Class, to purchase Harley-Davidson's Extended Service Plan.

153.    As a result of Harley-Davidson's concealment of this information, Plaintiffs and members of the California Sub-Class purchased the subject Extended Service Plan under a material mistake of fact.

154.    In knowingly concealing these facts with the intent to cause Plaintiffs and members of the California Sub-Class to purchase their Extended Service Plan under a material mistake or acting recklessly with regard to the truth or falsehood of these facts, Harley-Davidson defrauded its customers, including Plaintiffs and members of the California Sub-Class.

1        155.  Harley-Davidson further perpetuated the mistake of fact by making partial

2  disclosures.

3        156.  Harley-Davidson had a duty to disclose the exclusion of such charges to

4  Plaintiffs and members of the California Sub-Class because the fact was material to the

5  transactions entered into by Plaintiffs and members of the California Sub-Class.

6        157.  Harley-Davidson's duty also arises from the fact that, Harley-Davidson, as

7  the party with knowledge of the exclusion, knew that Plaintiffs and members of the California

8  Sub-Class were entering transactions under a mistake as to the nature and extent of coverage

9  under the Extended Service Plan.

10        158.  Harley-Davidson's duty also arises from the fact that the exclusion of

11  charges for diagnostic and teardown procedures was peculiarly and exclusively within Harley-

12  Davidson's knowledge, Plaintiffs and members of the California Sub-Class could not reasonably

13  be expected to discover it, and Plaintiffs and members of the California Sub-Class reasonably

14  expected disclosure of the fact of the exclusion.

15        159.  Plaintiffs and members of the California Sub-Class reasonably and

16  justifiably relied on Harley-Davidson's silence in failing to disclose the truth about its Extended

17  Service Plan.

18        160.  Plaintiffs and members of the California Sub-Class would not have agreed

19  to purchase their Extended Service Plan, or would have paid a lower price, if they had not been

20  deceived by Harley-Davidson.

21        161.  Plaintiffs and members of the California Sub-Class, who were fraudulently

22  induced by Harley-Davidson to purchase their Extended Service Plan, may either affirm their

23  contracts and seek damages for breach or pursue the equitable remedy of rescission and seek

24  restitutionary damages, including sums necessary to restore them to their respective positions

25  prior to the making of their contracts.

26        162.  On behalf of themselves and all others similarly situated, Plaintiffs and the

27  California Sub-Class seek to affirm their contracts and demand judgment against Harley-

28  Davidson for breach, including damages, costs and attorneys' fees, plus interest.

163.    In the alternative, on behalf of themselves and all others similarly situated, Plaintiffs and the California Sub-Class demand rescission and seek restitutionary damages, including the purchase price of the Extended Service Plan necessary to restore them to their respective positions prior to the making of their contracts, costs, and attorneys' fees, plus interest.

## SEVENTH CAUSE OF ACTION
### Promissory Estoppel
### (On Behalf of the California Sub-Class)

164.    Plaintiffs and the California Sub-Class reallege and incorporate, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further allege as follows.

165.    To establish a claim for promissory estoppel, there must be:  (a) the existence of promise (b) which the promisor reasonably should have expected to induce the promisee's reliance (c) which actually induced such reliance, (d) that such reliance was reasonable, and (e) that injustice can only be avoided by enforcement of the promise.

166.    In marketing, advertising, and selling the Extended Service Plan, Harley-Davidson promised Plaintiffs and members of the California Sub-Class that they would not pay more than the $50 Deductible.

167.    Harley-Davidson intended for consumers to rely on its representations regarding the Extended Service Plan's $50 Deductible.  Harley-Davidson knew that the $50 Deductible was attractive to customers because it provided certainty and limited their future exposure to unknown future repair costs, and therefore would induce customers to purchase the Plan.

168.    The $50 Deductible was a primary selling point of the Extended Service Plan.  Had Plaintiffs and members of the California Sub-Class known that the Extended Service Plan, as provided by Part II and administered by Harley-Davidson, would result in charges in excess of the $50 Deductible, they would not have purchased the Plan, or would have paid less for them.

169.   Plaintiffs and members of the California Sub-Class reasonably relied on Harley-Davidson's promise that under the Extended Service Plan, they would not be charged in excess of the $50 Deductible.

170.   Plaintiffs and members of the California Sub-Class have been proximately damaged as a result of their reliance on Harley-Davidson's misrepresentations in that they purchased the Extended Service Plan which, as provided by Part II and administered by Harley-Davidson, does not limit payments to the $50 Deductible and instead additionally imposes on them charges for diagnostic and teardown procedures.

171.   It would be unjust for Harley-Davidson to avoid enforcement of Harley-Davidson's promise to Plaintiffs and members of the California Sub-Class that under the Extended Service Plan, they would not be charged in excess of the $50 Deductible.

### EIGHTH CAUSE OF ACTION
**Unjust Enrichment**
**(On Behalf of the Nationwide Class)**

172.   Plaintiffs and the Nationwide Class reallege and incorporate, as if fully alleged herein, each of the allegations contained in the preceding paragraphs of this Complaint, and further allege as follows.

173.   To the detriment of Plaintiffs and members of the Nationwide Class, Harley-Davidson has been, and continues to be, unjustly enriched as a result of the unlawful and/or wrongful collection of payments for the Extended Service Plan.

174.   Harley-Davidson has unjustly benefited through the unlawful and/or wrongful collection of payments for the Extended Service Plan, and continues to so benefit to the detriment and at the expense of Plaintiffs and members of the Nationwide Class.

175.   It would be unjust for Harley-Davidson to retain the benefits attained by its actions.  Accordingly, Plaintiffs and the Nationwide Class seek full restitution of Harley-Davidson's enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs and the Proposed Class request that the Court enter an Order or judgment against Harley-Davidson, including the following:

1.      An Order certifying this action as a Nationwide Class Action (and certifying a California Sub-Class and any other appropriate subclasses), appointing Plaintiffs as Class Representatives and their counsel of record as Class Counsel;

2.      Restitution in the amount of monies paid for the Extended Service Plan;

3.      Actual damages, statutory damages, punitive damages, or treble damages, and such other relief as provided by the statutes cited herein;

4.      Pre-judgment and post-judgment interest on such monetary relief;

5.      Equitable relief in the form of restitution and/or restitutionary disgorgement of sums received by Harley-Davidson as a result of the unfair, unlawful, and/or deceptive conduct alleged in herein;

6.      Injunctive relief;

7.      The costs of bringing this suit, including reasonable attorneys' fees; and

8.      All other relief to which Plaintiffs and members of the Proposed Class may be entitled at law or in equity and which the Court deems proper.

**JURY DEMAND**

Plaintiffs, individually and on behalf of the Proposed Class, hereby request a jury trial on the claims so triable.

Dated:  June 8, 2009          Respectfully submitted,

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By: _____
Jonathan D. Selbin

Jonathan D. Selbin
Allen Wong
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kristen E. Law
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 28th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Attorneys for Plaintiffs and the Proposed Class

# EXHIBIT A



HARLEY-DAVIDSON MOTOR COMPANY
Owner Warranty Identification Card

1HD1 FCW303Y 602178
THOMAS HORNE

0243                                    JULY 31, 2002

EXTENDED
SERVICE PLAN

SERVICE CENTER

HDM-4770538
Service Contract Number

Buyer's Signature

# EXHIBIT B

**SIMPLE INTEREST FINANCE CHARGE**

| Dealer Number | Contract Number | R.O.S. Number | Stock Number |
|---|---|---|---|

Buyer (and Co-Buyer) Name and Address (Including County and Zip Code)
Thomas & Christine Horne
1237 Samoa Ave.
Lancaster, Ca. 93535

Creditor - Seller (Name and Address)
Harley Davidson of Lancaster
1759 W. Ave. J-12
Lancaster, Ca. 93534

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| New | 2003 | Harley FLHTCUI | 5 | 1HD1FCW303Y602178 | ☒ Personal, family, or household ☐ Business ☐ agricultural |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ |
|---|---|---|---|---|
| 9.99 % | $7954.22 | $20124. | $28159. | $32659. (e) means estimate |

### YOUR PAYMENT SCHEDULE WILL BE:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| One Payment of | | |
| One Payment of | | |
| 84 Payments | 339.99 | Monthly, Beginning |
| One Final Payment of | | |

Late Charge. If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
Prepayment. If you pay off all your debt early, you may be charged a minimum finance charge.
Security Interest. You are giving a security interest in the vehicle being purchased.
Additional Information. See this contract for more information, including information about nonpayment, default, any required repayment in full before the scheduled date, minimum finance charges, and security interest.

## STATEMENT OF INSURANCE

### Vehicle Insurance

### ITEMIZATION OF THE AMOUNT FINANCED

1. Total Cash Price
   A. Cash Price of Motor Vehicle and Accessories ..... $ (A)
      1. Cash Price Vehicle ..... $
      2. Cash Price Accessories ..... $
   B. Document Preparation Fee (not a governmental fee) ..... $ 45.00 (B)
   C. Smog Fee Paid to Seller ..... $ (C)
   D. Sales Tax (on A + B + C) ..... $ 1919.00 (D)
   E. Luxury Tax ..... $ (E)
   F. Service Contract (optional) ..... $ 1145. (F)
   G. Prior Credit or Lease Balance paid by Seller to ..... $ (G)
      (see downpayment and trade-in calculation)
   H. Other (to whom paid) ..... $ (H)
      For ..... 
   Total Cash Price (A through H) ..... $ 34509.00
2. Amounts Paid to Public Officials
   A. License Fees ..... $ (A)
   B. Registration/Transfer/Titling Fees ..... $ 181.00 (B)
   C. Smog Impact Fee ..... $ 0 (C)
   D. Other ..... $ 0 (D)
   E. Other ..... $ 0 (E)
   Total Official Fees (A through E) ..... $ 181.00
3. Amount Paid to Insurance Companies
   (Total premiums from Statement of Insurance column A + B) ..... $
4. Smog Certification Fee Paid to State ..... $
5. Subtotal (1 through 4) ..... $ 34624.00
6. Total Downpayment
   A. Gross Trade-In   Yr. _____ Make. _____ (A)
      Model _____ Odom. _____
      VIN _____
   B. Less Prior Credit or Lease Balance ..... $ (B)
   C. Net Trade-In (A less B) (Indicate if a negative number) ..... $ (C)
   D. Deferred Downpayment ..... $ (D)
   E. Manufacturer's Rebate ..... $ (E)
   F. Other ..... $ (F)
   G. Cash ..... $ 4500.00 (G)
   Total Downpayment (C through G) ..... $ 4500.00
   (if negative, enter zero on line 6 and enter the amount less than zero as a positive number on line 1G above)
7. Amount Financed (5 less 6) ..... $ 20124.00

### AUTO BROKER FEE DISCLOSURE
If this contract reflects the retail sale...

(Not government fee and taxable portion) ........ $ 0 (G)
H. Other (for which paid) ........ $ 0 (H)
For
Total Cash Price (A through H) ........ $ 24,503.__ (1)

2. Amounts Paid to Public Officials
A. License Fees ........ $ 0 (A)
B. Registration/Transfer/Titling Fees ........ $ 181.00 (B)
C. Smog Impact Fee ........ $ 0 (C)
D. Other ........ $ 0 (D)
E. Other ........ $ 0 (E)
Total Official Fees (A through E) ........ $ 181.00 (2)

3. Amount Paid to Insurance Companies (Total premiums from Statement of Insurance column a + b)* ........ $ 0 (3)
4. Smog Certification Fee Paid to State ........ $ 0 (4)
5. Subtotal (1 through 4) ........ $ 24,6__ (5)

6. Total Downpayment
A. Gross Trade-in Yr. ____ Make ____ $ 0 (A)
Model ____ Odom ____
VIN ____
B. Less Prior Credit or Lease Balance ........ $ 0 (B)
C. Net Trade-In (A less B) (indicate if a negative number) ........ $ 0 (C)
D. Deferred Downpayment ........ $ 0 (D)
E. Manufacturer's Rebate ........ $ 0 (E)
F. Other ........ $ 0 (F)
G. Cash ........ $ 4500.00 (G)
Total Downpayment (C through G) ........ $ 4500.00 (6)
(If negative, enter zero on line 6 and enter the amount less than zero as a positive number on line 1G above)

7. Amount Financed (5 less 6) ........ $ 20,1__.__ (7)

*Seller may keep part of these amounts.

Credit life insurance and credit disability insurance are not required to obtain credit. They will not be provided unless you sign and agree to pay the extra cost. Credit life insurance ... your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown above.

You are applying for the credit insurance marked above. Your signature below means that you agree that: (1) You are not eligible for insurance if you have reached your 65th birthday. (2) You are eligible for disability insurance only if you are working for wages or profit 30 hours a week or more on the Effective Date. (3) Only the Primary Buyer is eligible for disability insurance. DISABILITY INSURANCE MAY NOT COVER CONDITIONS FOR WHICH YOU HAVE SEEN A DOCTOR OR CHIROPRACTOR IN THE LAST 6 MONTHS (Refer to "Total Disabilities Not Covered" in your policy for details).

Date ____ X ____ Buyer Signature ____ Age
Date ____ X ____ Co-Buyer Signature ____ Age

OPTIONAL GAP CONTRACT. A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra cost. If you choose to buy a gap contract, the cost is shown in Item 1H. See your gap contract for details on the protection it provides.
Term ____ Mos. ____ Name of Gap Contract
Buyer X ____

SERVICE CONTRACT (Optional) You want to purchase a service contract written with the following company for the term shown below for the price shown in Item 1F.
Company Harley Davidson
Term ____ Mos. ____ Miles
Buyer X ____

HOW THIS CONTRACT CAN BE CHANGED. This contract contains the entire agreement between you and us relating to this contract. Any change to the contract must be in writing and both you and we must sign it. No oral changes are binding.

X ____ Buyer Initials X ____ Co-Buyer Initials

SELLER ASSISTED LOAN:
BUYER MAY BE REQUIRED TO PLEDGE SECURITY FOR THE LOAN, AND WILL BE OBLIGATED FOR THE INSTALLMENT PAYMENTS ON BOTH THIS RETAIL INSTALLMENT SALE CONTRACT AND THE LOAN.
Proceeds of Loan from ____
Amount $ ____ Finance Charge $ ____

AUTO BROKER FEE DISCLOSURE
If this contract reflects the retail sale of a new motor vehicle, the sale is not subject to a fee received by an autobroker from us unless the following box is checked:
☐ Name of autobroker receiving fee, if applicable: ____

[illegible] the back giving the Seller the right to cancel if Seller is unable to assign this contract to a financial institution [illegible]

Buyer X ____ Co-Buyer X ____

OPTION: ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before ____, Year ____. SELLER'S INITIALS ____

THE MINIMUM PUBLIC LIABILITY INSURANCE LIMITS PROVIDED IN LAW MUST BE MET BY EVERY PERSON WHO PURCHASES A VEHICLE. IF YOU ARE UNSURE WHETHER OR NOT YOUR CURRENT INSURANCE POLICY WILL COVER YOUR NEWLY ACQUIRED VEHICLE IN THE EVENT OF AN ACCIDENT, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
WARNING:
YOUR PRESENT POLICY MAY NOT COVER COLLISION DAMAGE OR MAY NOT PROVIDE FOR FULL REPLACEMENT COSTS FOR THE VEHICLE BEING PURCHASED. IF YOU DO NOT HAVE FULL COVERAGE, SUPPLEMENTAL COVERAGE FOR COLLISION DAMAGE MAY BE AVAILABLE TO YOU THROUGH YOUR INSURANCE AGENT OR THROUGH THE SELLING DEALER. HOWEVER, UNLESS OTHERWISE SPECIFIED, THE COVERAGE YOU OBTAIN THROUGH THE DEALER PROTECTS ONLY THE DEALER, USUALLY UP TO THE AMOUNT OF THE UNPAID BALANCE REMAINING AFTER THE VEHICLE HAS BEEN REPOSSESSED AND SOLD.
FOR ADVICE ON FULL COVERAGE THAT WILL PROTECT YOU IN THE EVENT OF LOSS OR DAMAGE TO YOUR VEHICLE, YOU SHOULD CONTACT YOUR INSURANCE AGENT.
THE BUYER SHALL SIGN TO ACKNOWLEDGE THAT HE/SHE UNDERSTANDS THESE PUBLIC LIABILITY TERMS AND CONDITIONS.
S/S X ____ X ____

**Notice to buyer:** (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time. (4) If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.

If you have a complaint concerning this sale, you should try to resolve it with the seller.
Complaints concerning unfair or deceptive practices or methods by the seller may be referred to the city attorney, the district attorney, or an investigator for the Department of Motor Vehicles, or any combination thereof.
After this contract is signed, the seller may not change the financing or payment terms unless you agree in writing to the change. You do not have to agree to any change, and it is an unfair or deceptive practice for the seller to make a unilateral change.
Buyer Signature X ____ Co-Buyer Signature X ____

**THERE IS NO COOLING OFF PERIOD**
California law does not provide for a "cooling off" or other cancellation period for vehicle sales. Therefore you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud.

YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES OF THIS CONTRACT BEFORE SIGNING BELOW.

YOU ACKNOWLEDGE RECEIPT OF A TRUE AND COMPLETELY FILLED IN COPY OF THIS CONTRACT AND EVERY OTHER DOCUMENT THAT YOU SIGNED DURING CONTRACT NEGOTIATIONS.

Buyer Signature X ____ Date 7/3/02 Co-Buyer Signature X ____ Date 7/3/02

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The co-buyer or other owner knows that the Creditor has a security interest in the vehicle and consents to the security interest.

Other Owner Signature X ____
Seller Signature X ____ Date 7/3/02 Address ____ By ____ Title GM

LAW FORM NO. 553-CA 1/00

CUSTOMER/TRUTH IN LENDING COPY

## FINANCE CHARGE AND PAYMENTS.

1. **How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

2. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

**How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment, or at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

3. **You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time. If you do, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment. ...

## YOUR OTHER PROMISES TO US.

a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us as if you were under this contract even if the vehicle is damaged, destroyed, or missing. ...

b. **Using the vehicle.** You agree not to remove the vehicle ...

c. **Security Interest.** You give us a security interest in:
- The vehicle and all parts or goods installed in it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or gap contracts we finance for you; and
- All proceeds from insurance or service or gap contracts. This includes any ...

d. **Insurance you must have on the vehicle.** You agree to have physical damage insurance ...

## IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES.

1. **We will sell the vehicle** if you do not get it back. If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We may apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless ...

8. **What we may do about optional insurance or service or gap contracts.** This contract may contain charges for optional insurance or services or gap contracts. If we ...

## WARRANTIES SELLER DISCLAIMS.

If you do not get a written warranty, and the Seller does not enter into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.

This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

5. **Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contract provisions in the contract of sale.

Spanish Translation: Guía para compradores de vehículos usados. ...

6. **Applicable Law.** Federal law and California law apply to this contract. If any part of this contract is not valid, all other parts stay valid. ...

## CREDIT DISABILITY INSURANCE NOTICE CLAIM PROCEDURE

If you become disabled, you must tell us right away. ...

finance for you, and.

d. **Insurance you must have on the vehicle.**

e. **What happens to refunded insurance or service;**

**8. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES.**

a. **You may owe late charges.**

b. **Default.**

c. **You may have to pay collection costs.**

d. **We may take the vehicle from you.**

e. **How you can get the vehicle back if we take it.**

**CREDIT DISABILITY INSURANCE NOTICE CLAIM PROCEDURE**

a. Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you.

b. Seller shall give you written notice (or in any other manner...

c. If you do not immediately return the vehicle, you shall...

d. While the vehicle is in your possession, all terms of the contract...

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only if the "personal, family or household" or the "Primary Use for Which Purchased" section of this contract is checked.

| Seller Assigns its interest in this contract to | |
|---|---|
| ☐ Assigned with recourse | ☐ Assigned without recourse | ☐ Assigned with limited recourse |

| Seller | By | Title |
|---|---|---|

# EXHIBIT C

 **HARLEY-DAVIDSON**                                    DEALER LOCATOR   F&Q   CART

MOTORCYCLES   GET ON A BIKE   ACCESSORIES & APPAREL   EXPERIENCE                    MU

**HARLEY OWNERS GROUP®**

**PROTECT YOUR BIKE**
 Cycle Insurance
 Extended Service Plan
 Protection Plans

**SERVICE CHECK-UP**

**MOTORCYCLE SHIPPING**

**DIRECTPAY** 🖃

# EXTENDED SERVICE PLAN



Take action before your factory warranty expires. Unfortunately, you can't buy the Harley-Davidson Extended Service Plan after your factory warranty expires.

 DEALER L

## COVER YOUR BIKE

You can sit back and hope your Harley never breaks down, or you can act to protect your investment and your finances. Ride worry-free with the Harley-Davidson Extended Service Plan. It protects you from costly repairs if you're ever faced with them.

You didn't settle for less when you got your Harley®. Don't settle for anything less than the best service plan available—the Harley-Davidson Extended Service Plan.

**The Harley-Davidson Extended Service Plan**

- Fender-to-Fender protection against mechanical breakdowns lets you ride worry free for years. Plans are available for both new and used Harley-Davidson® and Buell® motorcycles.

- Locked-in repair costs: All you'll ever pay is the $50 deductible for covered repairs per visit, not per repair.

- Protected Resale: The H-D Extended Service Plan can be transferred to a new owner for free. This ensures that you'll get the highest possible resale value for your motorcycle.

- Travel Protection: Reimbursements provided for a rental car, pickup charges, hotel and your meals*. We'll never leave you stranded.

- Payment Options: You can pay for this valuable protection with the Harley-Davidson® Visa® Card, or include it with your loan from Harley-Davidson Credit.

* Restrictions apply: See actual contract (Part I and Part II) for specific coverage, exclusions and restrictions.

Legal Notice | We Care About You | Harley-Davidson Financial Services Privacy Policy | Harley-Davidson Financi
© 2001-2009 H-D. All rights reserved.

# EXHIBIT D

# HARLEY-DAVIDSON
### Extended Service Plan
Motorcycle Service Contract
## PART I
### PROOF OF REGISTRATION
TOGETHER WITH THE PART II COMPLETES THIS MOTORCYCLE SERVICE CONTRACT

Today's Date **7-31-02**
(CONTRACT SALE DATE)

| Name of Purchaser | | | | Dealer Code **0243** | Contract Number **HDM 4770538** |
|---|---|---|---|---|---|
| Thomas Horne | | | | | |

| Address | City | State | Zip | Effective Date (IN-SERVICE) **7-31-02** | Current Miles **8** |
|---|---|---|---|---|---|
| 1237 Samra Ave | Lancaster | Ca | 93535 | | |

| SELLING DEALER | | Telephone | | Expiration Date **7-31-69** | Expiration Mileage **UNLIMITED** |
|---|---|---|---|---|---|
| Harley Davidson of Lancaster | | 943-5959 | | | |

| Address | City | State | Zip | Year **2003** | Make **HARLEY - DAVIDSON** |
|---|---|---|---|---|---|
| 1759 W Ave J2 | Lancaster | Ca | 93534 | | |

Serial Number: **1HD1FJW30YY002HH3**

Engine Size **1450** cc   Model **8  FLHTCUI**

Vehicle Purchase Price **$ 21255.00**   Service Contract Price **$ 1149.00**

Per Contract Terms / $ Per contract terms

Lienholder (if applicable)
Harley Davidson Credit

## CHECK (✓) CONTRACT PLAN/TERM SELECTION

### NEW MOTORCYCLES*
(check one)

- [ ] 2 Years/Unlimited Mileage
- [ ] 3 Years/Unlimited Mileage
- [ ] 4 Years/Unlimited Mileage
- [ ] 5 Years/Unlimited Mileage
- [ ] 6 Years/Unlimited Mileage
- [✓] 7 Years/Unlimited Mileage

*A MOTORCYCLE which, at the CONTRACT SALE DATE, has the full factory warranty in force. A surcharge is required in order to cover any MOTORCYCLE for which the CONTRACT SALE DATE is greater than ninety (90) days from the IN-SERVICE DATE or the mileage at the time of contract sale is greater than two thousand (2,000), whichever occurs first.

### USED MOTORCYCLES**
(check one)

- [ ] 1 Year/Unlimited Mileage
- [ ] 2 Years/Unlimited Mileage
- [ ] 3 Years/Unlimited Mileage

**USED MOTORCYCLE, any eligible MOTORCYCLE other than a NEW MOTORCYCLE which is fewer than ten (10) calendar years old with mileage of fifty thousand (50,000) miles or fewer. YOU must purchase this contract on the date that YOU purchase the USED MOTORCYCLE from the SELLING DEALER.

### NEW POLICE MOTORCYCLES*
(check one)
(For state, county and city government new police MOTORCYCLES only)

- [ ] 2 Years / Unlimited Mileage
- [ ] 3 Years / Unlimited Mileage

*A MOTORCYCLE which, at the CONTRACT SALE DATE, has the full factory warranty in force. A surcharge is required in order to cover any MOTORCYCLE for which the CONTRACT SALE DATE is greater than ninety (90) days from the IN-SERVICE DATE or the mileage at the time of contract sale is greater than two thousand (2,000), whichever occurs first.

The contract plan/term selection determines YOUR coverage. Make sure YOUR Part II matches the contract plan selected. It is further understood that YOUR coverage begins on the effective date (IN-SERVICE DATE) for NEW MOTORCYCLE coverage and the CONTRACT SALE DATE for USED MOTORCYCLE coverage. Expiration of coverage is determined by the expiration date indicated above. Specific state requirements may apply to YOUR contract and are listed on the reverse side of this page. Furthermore, please acknowledge by signing below that YOU have read and accept the provisions of the contract as a complete statement of YOUR coverage and rights and that YOU are not relying on any writings other than this contract or any other representations or promises.

YOU are hereby advised that in the event of cancellation of YOUR contract for reasons other than repossession or a total loss of the MOTORCYCLE, any resulting refund will be made payable to both the SELLING DEALER and lienholder and forwarded to the SELLING DEALER.

Harley-Davidson has retained a SERVICE CENTER to provide administrative services on its behalf. Should YOU have any questions concerning coverage or benefits under this contract, YOU may call the HARLEY-DAVIDSON SERVICE CENTER at 800-527-7865, extension 444.

_____
Purchaser Signature

**7/31/02**
Date

White - Purchaser    Green - Lender    Pink - Harley-Davidson Service Center    Gold - Dealer

WNS400 (3/99)

Copyright © 1999 by Western National Warranty Corporation.
All Rights Reserved

# EXHIBIT E

HDM



# Your Contract



*Protecting the experience*<sup>SM</sup>      Harley-Davidson Insurance

# HARLEY-DAVIDSON
# EXTENDED SERVICE PLAN CONTRACT

### Part II



HDM | 4 7 0 5 8

Recorded from Part I

This motorcycle service contract is for new and used Harley-Davidson motorcycles. The Part 1 (PROOF OF REGISTRATION) of this contract completes and validates this contract and contains the following information:

- Your contract number
- The plan/term selected
- Your name and address
- Applicable surcharge
- The selling dealer
- The MOTORCYCLE description
- The contract price
- State-specific information

This contract is not an insurance policy. This contract is between US (Harley-Davidson) and YOU (purchaser). It provides coverage (see Section 4, "Component Coverage and Expense Reimbursement Package" and Section 5, "Surcharge") only to YOU for the MOTORCYCLE and for the term selected as indicated on the Part 1 (PROOF OF REGISTRATION) of this contract.

## SECTION 1. DEFINITIONS

This contract contains several words and phrases that have particular meaning and appear in BOLD PRINT throughout this contract.

**"CONTRACT SALE DATE"**
The sale date of this contract to YOU by US. YOU may not claim reimbursement for any charges or costs which YOU incurred prior to the CONTRACT SALE DATE. Be sure to verify the CONTRACT SALE DATE as shown on the Part 1 (PROOF OF REGISTRATION) of this contract.

**"COVERED PART" and "COVERED PARTS"**
Any of those parts of YOUR MOTORCYCLE listed in Section 4, "Component Coverage and Expense Reimbursement Package" and Section 5, "Surcharge" and subject to the conditions and exclusions listed in Section 8, "Noncovered Parts and Maintenance Services" and Section 9, "Noncovered Conditions." Any part not listed in Section 4, "Component Coverage and Expense Reimbursement Package" is not covered.

**"DEDUCTIBLE"**
The portion of the REPAIR COSTS which YOU must pay (see Section 3, "Deductible" for a listing of this amount).

**"HARLEY-DAVIDSON SERVICE CENTER" and "ADMINISTRATOR"**
The organization that WE have retained to provide claim and administrative service for OUR service contract plan. OUR ADMINISTRATOR, its agents and assigns are not a party to this contract and have no liability to YOU under the terms of this contract.

**"IN-SERVICE DATE" for NEW MOTORCYCLES**
The Harley-Davidson NEW MOTORCYCLE factory warranty start date or the first day of use, regardless of the CONTRACT SALE DATE.

**"MECHANICAL BREAKDOWN" and "BREAKDOWN"**
The failure of a COVERED PART to perform that function for which it was designed due to defects in materials or faulty workmanship in its manufacturing.

**"MOTORCYCLE"**
The eligible Harley-Davidson motorcycle described in the Part 1 (PROOF OF REGISTRATION) of this contract.

**"NEW MOTORCYCLE"**
A MOTORCYCLE which, at the CONTRACT SALE DATE, still retains some coverage under the Harley-Davidson NEW MOTORCYCLE factory warranty. A surcharge is required in order to cover any MOTORCYCLE for which the CONTRACT SALE DATE is greater than ninety (90) days from the IN-SERVICE DATE or the mileage at the time of-sale is greater than two thousand (2,000) miles, whichever occurs first.

**"REPAIR COSTS" and "COSTS"**
The actual labor and parts amounts charged by a licensed repair facility to repair or replace COVERED PARTS as required due to a BREAKDOWN, subject to the terms and conditions of this contract and as authorized by OUR ADMINISTRATOR. Parts COSTS are limited to the Harley-Davidson suggested retail price. Replacement parts may be of like kind and quality when available

and as deemed necessary by OUR ADMINISTRATOR. Labor time COSTS are limited to 125% of the repair time shown in the current year's Harley-Davidson flat-rate hourly labor guide multiplied by the repair facility's prevailing retail hourly labor rate. COSTS also include all necessary fluids, filters, seals, gaskets and taxes. YOU must pay for all diagnostic, disassembly, service, repair and other charges not authorized by OUR ADMINISTRATOR.

**"SELLING DEALER"**
The authorized Harley-Davidson motorcycle dealer from whom YOU purchased YOUR Harley-Davidson Extended Service Plan.

**"USED MOTORCYCLE"**
Any eligible MOTORCYCLE other than a NEW MOTORCYCLE which is fewer than ten (10) years old with mileage of fifty thousand (50,000) miles or fewer. YOU must purchase this contract on the date that YOU purchase the USED MOTORCYCLE.

**"WE", "US" and "OUR"**
Harley-Davidson.

**"YOU" and "YOUR"**
The purchaser of the MOTORCYCLE described in the Part 1 (PROOF OF REGISTRATION) of this contract.

## SECTION 2. WHAT THIS CONTRACT COVERS

**CONTRACT TERRITORY:**
This contract provides coverage in the United States, including its territories and possessions, and Canada only for failures due solely to the MECHANICAL BREAKDOWN of COVERED PARTS.

**CONTRACT TERM:**
The contract plan which YOU have selected as shown on the Part 1 (PROOF OF REGISTRATION) of this contract determines the CONTRACT TERM for this contract. The CONTRACT TERM for all NEW MOTORCYCLES begins on the IN-SERVICE DATE and expires when the time from the IN-SERVICE DATE reaches the limits of the contract plan. The CONTRACT TERM for USED MOTORCYCLES begins on the CONTRACT SALE DATE and expires when the time from the CONTRACT SALE DATE reaches the limits of the contract plan.

**CONTRACT COVERAGE PERIOD:**
Coverage under the terms and conditions of this contract begins on the CONTRACT SALE DATE.

**CONTRACT CHANGES:**
If any of the information contained in the Part 1 (PROOF OF REGISTRATION) of this contract is in error, YOU must contact US or OUR ADMINISTRATOR immediately. This contract may be changed only by endorsement issued by OUR ADMINISTRATOR.

**CONTRACT AGREEMENT:**
YOU must take YOUR MOTORCYCLE to the SELLING DEALER or an authorized Harley-Davidson repair facility for repairs. WE will pay for COSTS to repair or replace COVERED PARTS which fail due to a MECHANICAL BREAKDOWN, less the DEDUCTIBLE.

**EXCESS CHARGES:**
YOU are responsible for any charges for diagnostic and/or teardown procedures that are not listed, or are in excess of the times listed, in the current year's Harley-Davidson flat-rate hourly labor guide. YOU are also responsible for any charges for parts, labor, rental, pickup or other services beyond those authorized by OUR ADMINISTRATOR to repair a BREAKDOWN of YOUR MOTORCYCLE.

**LIMIT OF LIABILITY:**
OUR liability for any repair visit shall not exceed the fair market value of YOUR MOTORCYCLE immediately prior to the BREAKDOWN. The total amount which WE will pay for all claims paid and/or payable throughout the CONTRACT TERM shall not exceed the purchase price of YOUR MOTORCYCLE as indicated on the Part 1 (PROOF OF REGISTRATION) of this contract.

## SECTION 3. DEDUCTIBLE

The DEDUCTIBLE for both NEW MOTORCYCLES and USED MOTORCYCLES is fifty dollars ($50). The DEDUCTIBLE applies to each repair visit and is the amount of the REPAIR COSTS that YOU must pay. The DEDUCTIBLE does not apply to rental, pickup, or travel lodging reimbursement coverages.

## SECTION 4. COMPONENT COVERAGE AND EXPENSE
## REIMBURSEMENT PACKAGE

Coverage under this contract includes the parts of the components listed below and subject to the conditions and exclusions listed in Section 8, "Noncovered Parts and Maintenance Services" and Section 9, "Noncovered Conditions."

**NEW & USED MOTORCYCLE COVERAGE:**

- ENGINE
- TRANSMISSION
- PRIMARY DRIVE
- FRONT-SUSPENSION ASSEMBLY
- REAR-SUSPENSION ASSEMBLY
- STEERING ASSEMBLY
- BRAKE SYSTEM
- FUEL SYSTEM
- ELECTRICAL SYSTEM
- INSTRUMENTS and GAUGES
- SEALS and GASKETS
- TOURING PACKAGE

**TOURING PACKAGE:**
Not available for Buell or police motorcycles.

1. **AUDIO ENTERTAINMENT GROUP**
   **Coverage limited to these listed parts:**
   Receiver, tape deck, CD player.

2. **CB RADIO/INTERCOM**
   **Coverage limited to these listed parts:**
   Transmitter/receiver, headset, microphone, splitter, console pod, cables and jacks.

3. **FAIRING**
   **Coverage limited to these listed parts:**
   Mounting hardware, brackets, switches, covers, latches and hinges.

4. **SADDLEBAG/TRAVEL TRUNKS**
   **Coverage limited to these listed parts:**
   Bags, trunks, latches, hinges, mounting hardware

5. **SIDECAR**
   **Coverage limited to these listed parts:**
   Mounting hardware, hub, spindle, wheel bearings, brake rotor, caliper, lines and fittings, suspension, latches and hinges.

**EXPENSE REIMBURSEMENT PACKAGE:**
Not available for police motorcycles. See Part 1 (PROOF OF REGISTRATION) for state-specific details.

1. **RENTAL REIMBURSEMENT:**
   When a BREAKDOWN makes YOUR MOTORCYCLE inoperative or unsafe to drive and YOUR MOTORCYCLE must remain in the shop overnight, WE will reimburse YOU for rental vehicle charges. The limit to this reimbursement per claim is two hundred fifty dollars ($250) not to exceed twenty-five dollars ($25) per 24-hour period. YOU must incur this expense between the date of the BREAKDOWN and the date on which covered repairs are completed. YOU must rent the substitute vehicle from a licensed rental agency.

2. **PICKUP REIMBURSEMENT:**
   When a BREAKDOWN makes YOUR MOTORCYCLE inoperative or unsafe to drive, WE will reimburse YOU for pickup charges which are not reimbursed to YOU by any road club or insurance policy or covered by the Harley-Davidson new motorcycle warranty. The limit to this reimbursement per claim is one hundred dollars ($100).

3. **TRAVEL LODGING REIMBURSEMENT:**
   When a BREAKDOWN disables YOUR MOTORCYCLE and YOU are stranded overnight and covered repairs are completed more than one hundred (100) miles from YOUR home, WE will reimburse YOU for lodging and meal expenses incurred by YOU between the date of BREAKDOWN and the date on which covered repairs are completed. The limit of this reimbursement per claim is two hundred twenty-five dollars ($225) not to exceed seventy-five dollars ($75) per 24-hour period.

### SECTION 5. SURCHARGE

An Extended Eligibility surcharge is required for all NEW MOTORCYCLES if the CONTRACT SALE DATE is greater than ninety (90) days from the IN-SERVICE DATE or the mileage at the time of sale is greater than two thousand (2,000) miles, whichever occurs first.

### SECTION 6. CONTRACT GUARANTEES

1. **NO-DEDUCTIBLE GUARANTEE:**
   No DEDUCTIBLE will be charged for any subsequent BREAKDOWN of a COVERED PART which was previously repaired or replaced under and during the term of this contract.

**2. TRANSFER GUARANTEE:**

YOU may transfer the remaining coverage under this contract when YOU sell YOUR MOTORCYCLE to another individual (no dealers, brokers, etc.) prior to the expiration of this contract. In order to complete this transfer process, provide OUR ADMINISTRATOR with the following information:

A. A letter from YOU within fifteen (15) days of the date of sale of YOUR MOTORCYCLE. State YOUR intention to transfer this contract and the name and the address of the purchaser.

B. A copy of the bill of sale or sale agreement showing the date and mileage on YOUR MOTORCYCLE at the time of sale.

C. Verifiable service records evidencing that YOU have complied with Section 7, "Your Responsibilities for Service and Maintenance" of this contract.

D. Proof that YOU have transferred the remaining coverage, if any, under the Harley-Davidson factory warranty.

YOU must comply with all of the above requirements within fifteen (15) days of the date of sale of YOUR MOTORCYCLE or this contract will no longer be in force.

## SECTION 7. YOUR RESPONSIBILITIES FOR SERVICE AND MAINTENANCE

**READ THIS SECTION CAREFULLY. IF YOU FAIL TO MAINTAIN YOUR MOTORCYCLE ACCORDING TO THE REQUIREMENTS BELOW, COVERAGE UNDER THIS CONTRACT COULD BE RESTRICTED OR VOIDED.**

**1. REQUIRED MAINTENANCE:**

YOU must have YOUR MOTORCYCLE serviced according to the service and maintenance schedule shown in YOUR Harley-Davidson owner's manual.

**2. REQUIRED RECORD KEEPING:**

YOU must keep repair orders issued by the repair facility performing the required services on YOUR MOTORCYCLE. Be sure that each repair order shows and lists in detail each of the services performed and maintenance parts replaced. If YOU perform YOUR own maintenance services, be sure to retain proof-of-purchase receipts. Make sure that the receipts clearly show the date the service was performed and the parts/lubricants replaced. Be sure to note the odometer reading from YOUR MOTORCYCLE on each receipt.

## SECTION 8. NONCOVERED PARTS AND MAINTENANCE SERVICES

During the term of this contract YOU may have to replace, repair or adjust certain parts which are NONCOVERED PARTS under the terms and conditions of this contract.

**SOME EXAMPLES OF NONCOVERED PARTS:**
Spark plugs and plug wires
Brake pads
Belt, hoses, lines and clamps
Battery, fuses, and fusible links
Shock absorbers, tires, wheels, and spokes
Exhaust system rust-out or discoloration
Mufflers or baffles
Filters and filter housings
Antenna mast and mirrors
Glass, lenses, sealed beams, and light bulbs
Trim, upholstery, and paint
Body parts, windshield, and their mounts
Fairing
Frame
Audio speakers and wiring, cellular telephone
Final drive chain or belt and rear sprocket

**SOME EXAMPLES OF NONCOVERED SERVICES:**
Scheduled maintenance services
Engine tune-up
Transmission service
Replacement or addition of fluids and lubricants
Cleaning of fuel system
Removal of carbon, sludge, varnish or other contaminants
Ignition/fuel system adjustments and calibrations
Wheel balancing or spoke adjustment
Correction of water leaks, squeaks, and rattles
Alignment of body parts

## REPLACEMENT OF NONCOVERED PARTS:

The replacement of these parts and the performance of these services are YOUR responsibility. The cost of these parts is not covered. The cost of these services is not covered.

### SECTION 9. NONCOVERED CONDITIONS

**This contract does not cover and it does not apply to:**

1. Any loss or expense if YOUR MOTORCYCLE is used or equipped for livery, delivery or emergency purposes (except Harley-Davidson police units covered under a Harley-Davidson Police Service Contract); competitive driving, racing, contests of speed; or overloading (including occupants, cargo or tow loads) in excess of the maximum weights specified in YOUR Harley-Davidson owner's manual.

2. Any damage due to collision or upset, breakage of glass, missile or falling objects, fire, theft, larceny, explosion, earthquake, windstorm, hail, water, flood, rust, corrosion, contamination, foreign objects, malicious mischief, vandalism, riot or civil commotion, lightning, nuclear contamination, freezing, smoke, or any loss normally covered by a motorcycle insurance policy including injury or death to any person or persons.

3. ANY EXPENSE INCURRED IN CONNECTION WITH REPAIRS PERFORMED WITHOUT RECEIPT OF PRIOR AUTHORIZATION FROM THE HARLEY-DAVIDSON SERVICE CENTER.

4. Any BREAKDOWN covered by any limited warranty, manufacturer's warranty, recalls, campaigns, repairer's guarantee, road club or any other guarantee, warranty or insurance policy.

5. Any part which the United States Environmental Protection Agency ("EPA") has determined is emissions-related and which is included on a current list published by the EPA of such parts and is within the EPA time and mileage emissions warranty period.

6. Any expense for the modification of, or alteration to, existing parts or systems necessitated by the replacement of obsolete, superseded or unavailable parts with current replacement parts.

7. Any BREAKDOWN caused by sludge buildup, contaminants, foreign objects, improper amount or type of fluids, lubricants, or lack of required maintenance as shown in Section 7, "Your Responsibilities for Service and Maintenance."

8. Any oil consumption or loss of compression or cylinder wear.

9. Any damage resulting from continued operation or caused by YOUR failure to take reasonable precautions to prevent further damage when an apparent problem exists.

10. Any resulting or consequential damage to or from a noncovered part.

11. Any BREAKDOWN if the odometer is inoperative or has been altered or tampered with during the time YOU owned YOUR MOTORCYCLE so that the actual mileage cannot be determined.

12. Any loss of time, inconvenience, interruption of business, storage charges, or loss of profits or income or other consequential damages.

13. Any items listed in Section 8, "Noncovered Parts and Maintenance Services."

14. YOUR MOTORCYCLE if it has been modified with any alterations to the powertrain, the suspension (including tire or wheel sizes) and/or an exhaust system not approved by Harley-Davidson.

15. Fees or expenses charged for the disposal, cleanup, neutralization, removal, treatment or detoxification of environmentally unsafe materials.

16. YOUR MOTORCYCLE if Harley-Davidson has voided or rescinded the factory warranty.

17. YOUR MOTORCYCLE if it has been salvaged or if its title has been branded or if it has been declared a total loss.

### SECTION 10. CANCELLATION

1. **PROCEDURES:**
   YOU may cancel this contract at any time by surrendering the Part I (PROOF OF REGISTRATION) and Part II to the SELLING DEALER together with a written request.

2. **REFUND DISTRIBUTION:**
   Should the MOTORCYCLE be repossessed or deemed a total loss, YOUR cancellation rights under this contract will transfer to the lienholder as its interest may appear. WE agree, upon receipt of evidence of same, to name the lienholder as the sole payee of any resulting refund. If this contract is financed either in conjunction with the purchase of YOUR MOTORCYCLE or separately, WE will name the lienholder as an additional payee for any refund due YOU.

3. **REFUND CALCULATION:**
   If YOUR request for cancellation is made within sixty (60) days of the purchase of this contract for NEW MOTORCYCLES or within thirty (30) days of the purchase of this contract for USED MOTORCYCLES and YOU have not filed a claim under this contract, the SELLING DEALER will refund the full purchase price of this contract to YOU. If YOU make a request for cancellation after the applicable time period above or if YOU have filed a claim under this contract, the SELLING DEALER will make a pro rata refund to YOU based upon the elapsed time from the IN-SERVICE DATE for NEW MOTORCYCLES and the CONTRACT SALE DATE for USED MOTORCYCLES, less a thirty-five dollar ($35) processing fee. OUR ADMINISTRATOR, its agents and its assigns have no liability to YOU to make any refund payments.

### SECTION 11. WHAT YOU MUST DO IN THE EVENT OF A MECHANICAL BREAKDOWN

1. Use all reasonable means to protect YOUR MOTORCYCLE from further damage resulting from continued operation.

2. Return YOUR MOTORCYCLE to the SELLING DEALER to determine the problem and the cause of failure. If this is not possible, call the HARLEY-DAVIDSON SERVICE CENTER for instructions.

3. YOU must authorize any charges necessary to determine the cause of the failure. This includes necessary diagnostic and teardown charges. If it is determined that the failure does not constitute a BREAKDOWN under the terms of this contract, YOU must pay for all diagnostic, teardown and repair charges. If an inspection of YOUR MOTORCYCLE is deemed necessary by OUR ADMINISTRATOR, YOU must allow such inspection to take place before any repairs are begun. OUR ADMINISTRATOR has no obligation to inspect YOUR MOTORCYCLE and no obligation to certify its condition before or after covered repairs are completed.

4. DO NOT agree to have repairs performed under the terms of this contract unless YOU or the repair facility has received an authorization number from the HARLEY-DAVIDSON SERVICE CENTER.

5. YOU or the repair facility must submit all required documents to the HARLEY-DAVIDSON SERVICE CENTER before any claim can be processed for payment. These documents must include accurate dates and mileages and detailed descriptions of the parts and services performed as well as the specific charges. These documents may include repair orders, rental car bills and other receipts evidencing amounts claimed under this contract.

6. If WE do not settle YOUR claim within sixty (60) days of OUR receipt of YOUR proof of loss, YOU may make a claim against:

   The Continental Insurance Company
   CNA Plaza
   Chicago, Illinois 60685
   312-822-5000

### SECTION 12. OUR ADMINISTRATOR

OUR ADMINISTRATOR is not a party to this contract and has no liability to YOU under the terms and conditions of this contract. Submit all claims and claim information requests to:

HARLEY-DAVIDSON SERVICE CENTER
P.O. Box 2840
Scottsdale, AZ 85252-2840
800-527-7665





Harley-Davidson Insurance
*Protecting the experience℠*

5401 (3/99)

# EXHIBIT F

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

ATTORNEYS AT LAW

JONATHAN D. SELBIN
PARTNER

250 HUDSON STREET, 8TH FLOOR
NEW YORK, NEW YORK 10013-1413
TELEPHONE: (212) 355-9500
FACSIMILE: (212) 355-9592
mail@lchb.com
www.lchb.com

SAN FRANCISCO
NASHVILLE

March 3, 2009

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

James L. Ziemer, President/CEO
Harley-Davidson, Inc.
Harley-Davidson Motor Company, Inc.
3700 West Juneau Avenue
Milwaukee, WI 53208

John S. Wolanin
Legal Compliance Department Manager
CAN National Warranty Corporation
4150 N. Drinkwater Blvd., Suite 400
Scottsdale, AZ 85251

C T Corporation System
8040 Excelsior Drive, Suite 200
Madison, WI 53717

C T Corporation System
818 West Seventh Street
Los Angeles, CA 90017

Re:    Notice and Demand Letter Re: Harley Davidson Extended Service Plan

To:    Harley-Davidson, Inc. and Harley-Davidson Motor Company, Inc.

Pursuant to the California Consumers Legal Remedies Act ("CLRA"), California Civil Code §1750, *et seq.*, and §1782, we hereby notify Harley-Davidson, Inc. and Harley-Davidson Motor Company, Inc. (together "Harley") of violations of the CLRA and of our demand that you correct, repair, replace, or otherwise rectify the goods or services within 30 days from your receipt of this letter.

We represent Thomas and Christine Horne, of Lancaster, California, who own a 2003 Harley Davidson FLHTCUI that they purchased on or about July 31, 2002 from Harley Davidson of Lancaster. At the time of purchase, the Hornes also purchased Harley's extended service contract ("Extended Service Plan"), HDM-4770538, at a cost of $1,149.00. Prior to, and at the time of, purchase, the only written materials the Hornes were provided relative to the Extended Service Plan were the actual warranty card itself, a copy of which is attached hereto as Ex. A, and the vehicle sales contract, a copy of which is attached hereto as Exhibit B, which merely references in a line item and a later section their purchase of the optional Extended Service Plan from Harley. The Hornes were told by the dealer at the time of purchase that should they experience any repair problems that were normally covered under their original standard warranty, they would only have to pay $50 for repairs under the Extended Service Plan. That statement is consistent with the only publicly available representation about the Extended

Harley-Davidson, Inc.
Harley-Davidson Motor Company, Inc.
March 3, 2009
Page 2

Service Plan we have been able to locate, which can be found on Harley's website, and states: "Locked-in repair costs. *All you'll ever pay is the $50 deductible for covered repairs per visit, not per repair.*" Ex. C (emphasis supplied). That same webpage also provides, in a note at the bottom of the page, that: "Restrictions apply. See actual contract (Part I and Part II) for specific coverages, exclusions and restrictions." The Hornes were not provided with the "actual contract (Part I and Part II)" prior to, or at the time of, their purchase of the Extended Service Plan, nor was it available to them at the dealership or elsewhere. In fact, they were unable to obtain it despite repeated requests over a six month period in 2008, and only obtained it after intervention by their counsel.

The "actual contract (Part I and Part II)" that the Hornes were *not* provided prior to or at the time of their purchase of the Extended Service Plan contains a section that is in direct conflict with what they were told at time of purchase, and what Harley represents publicly to be the case. Specifically, the "actual contract" provides, in a section entitled "Excess Charges," that the purchaser of the Extended Service Plan is "responsible for any charges for diagnostic and/or teardown procedures that are not listed, or are in excess of the times listed, in the current year's Harley-Davidson flat-rate hourly labor guide." Ex. D. In other words, while the Hornes were promised at the time they purchased their Extended Service Plan (and Harley uniformly represents in writing to the public) that they would only have to pay $50 per visit for repairs under the Extended Service Plan, the "actual contract" they were not provided specifies that in fact they would also be required to pay for diagnostic time and teardown procedures required to ascertain the reason for any problems their bike experienced. Simply put, this is a classic "bait and switch": what Harley promised the Hornes at the time of sale to induce them to spend $1149.00 to purchase the Extended Service Plan, Harley excludes in the fine print of the underlying contract not provided to the Hornes prior to or at the time of sale.

The Hornes experienced multiple failures of their bike between April 2008 (with mileage of approximately 28,000) and January 2009 (with mileage of approximately 37,000). Notwithstanding their Extended Service Plan and Harley's promise that all they would ever be required to pay is $50 per visit, the Hornes have been charged "diagnostic" fees to date in the amount of $335.63.

Our investigation reveals that the Hornes' experience is not unique or isolated. Indeed, our investigation reveals that in most, if not all, sales of the Extended Service Plan, Harley has failed to make copies of the "actual contract" purporting to govern its terms available to consumers prior to or at the time of their purchase of the Extended Service Plan, if ever.

Please be advised that Harley's false representations regarding the terms of coverage provided under its Extended Service Plan, and attendant failure to disclose material limitations on, and exclusions from, those terms, constitutes an unfair method of competition and/or unfair or deceptive act or practice in violation of the CLRA. Specifically, Harley has, without limitation:

      1.      Represented that goods or services have approval, characteristics, uses,

Harley-Davidson, Inc.
Harley-Davidson Motor Company, Inc.
March 3, 2009
Page 3

and benefits which they do not have  (California Civil Code §1770(a)(5));

2. Advertised goods or services with the intent not to sell them as advertised (California Civil Code §1770(a)(9)).

3. Represented that a transaction confers or involves rights, remedies, or obligations which it does not have or involve (California Civil Code §1770(a)(14));

4. Represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (California Civil Code §1770(a)(16));

5. Inserted an unconscionable provision in the contract (California Civil Code §1770(a)(19)).

On behalf of the Hornes and all other similarly-situated consumers in California (collectively the "Class"), we demand that Harley, within 30 days of receiving this letter (1) cease and desist its practice of promising coverage under the terms of its Extended Service Plan at the time of sale that it expressly excludes under the terms of the underlying contract not provided until after the sale, if at all; (2) provide direct mail notice to all purchasers of its Extended Service Plan of the actual terms of that Plan, and offer them each an option of choosing a) rescission and reimbursement of the purchase price of the Extended Service Plan or, in the alternative, b) affirmation of the Extended Service Plan, coupled with a partial refund of its purchase price; and (3) provide full reimbursement to the Hornes and all Class members like them who were charged and have paid out of pocket costs excluded from coverage under the "Excess Charges" section of the contract.  The Hornes intend to seek the full measure of relief available to them under section 1780, including without limitation actual damages, equitable relief, punitive damages, and attorneys' fees and costs.

This letter further serves as notice that Harley is in violation of the California Song-Beverly Consumer Warranty Act, Cal. Civ. Code §1790 *et seq.*, including, but not limited to, the requirement of section 1793.1 that "every manufacturer, distributor, or retailer making express warranties with respect to consumer goods shall *fully* set forth those warranties in simple and readily understood language . . . ." (emphasis supplied).  The Hornes intend to seek the full measure of relief available to them under section 1794, including, without limitation, actual damages, equitable relief, and attorneys' fees and costs.  With respect to this claim, the Hornes provide notice on behalf of themselves and all others similarly situated throughout California.

This letter further serves as notice that Harley is in violation of the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 15 U.S.C. §2301 *et seq.*, including, but not limited to:

1. section 2302(a)'s requirement that "any warrantor warranting a consumer

Harley-Davidson, Inc.
Harley-Davidson Motor Company, Inc.
March 3, 2009
Page 4

product to a consumer by means of a written warranty shall, to the extent required by rules of the Commission, *fully and conspicuously* disclose in simple and readily understood language the terms and conditions of such warranty," (emphasis supplied);

2.     section 2302(b)(1)(A)'s requirement that "the terms of any written warranty on a consumer product [must] be made available to the consumer (or prospective consumer) prior to the sale of the product to him;"

3.     section 2306(b)'s requirement that "a service contract with the consumer [must] . . . *fully, clearly, and conspicuously* discloses its terms and conditions in simple and readily understood language." (emphasis supplied).

The Hornes intend to seek the full measure of relief available to them under section 2310(d), including, without limitation, actual damages, equitable relief, and attorneys' fees and costs. With respect to this claim, the Hornes provide notice on behalf of themselves and all others similarly situated throughout the United States.

Any statutes of limitation otherwise applicable to the Hornes and similarly-situated consumers have been tolled by reason, *inter alia*, of Harley's active and actual concealment of the terms of the Extended Service Plan.

Please be advised that your failure to comply with this request within thirty (30) days may subject Harley to the following remedies, which are available for violation of the Consumers Legal Remedies Act, Song-Beverly Consumer Warranty Act, and Magnuson-Moss Warranty-Federal Trade Commission Improvement Act:

(1)     Actual damages suffered;

(2)     An order enjoining your methods, acts or practices;

(3)     Restitution and/or disgorgement;

(4)     Punitive damages;

(5)     Any other relief which the court deems proper;

(6)     Court costs and attorneys' fees, including expert fees; and

(7)     Penalty up to $5,000.00 upon a finding that a senior citizen or disabled person has suffered substantial physical, emotional or economic damage resulting from your conduct.

(California Civil Code §§1780(a)(1)-(5); (b); § 1794; 15 U.S.C. §2310(d)).

Harley-Davidson, Inc.
Harley-Davidson Motor Company, Inc.
March 3, 2009
Page 5


       Please advise us immediately if you dispute the effectiveness of this notice under §1782(a)(2) of the CLRA or §2310(e) of the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act.

       Very truly yours,

       Jonathan D. Selbin

cc:    Howard Cohn, Esq.
       Thomas and Christine Horne
Enclosures
802422.1



**HARLEY-DAVIDSON MOTOR COMPANY**
Owner Warranty Identification Card

1HD1 FCW303Y 602178

THOMAS HORNE

0243                              JULY 31, 2002

EXTENDED SERVICE PLAN

SERVICE CENTER

HDM-4770538
Service Contract Number

Buyer's Signature

## SIMPLE INTEREST FINANCE CHARGE

| Dealer Number | Contract Number | R.O.S. Number | Stock Number |
|---|---|---|---|

| Buyer (and Co-Buyer) Name and Address (including County and Zip Code) | Creditor - Seller (Name and Address) |
|---|---|
| Thomas & Christine Horne<br>1237 Samoa Ave.<br>Lancaster Ca. 93535 | Harley Davidson of Lancaster<br>1759 W. Ave J-12<br>Lancaster Ca. 93534 |

You, the Buyer (and Co-Signer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract. You agree to pay the Creditor - Seller (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New Used | Year | Make and Model | Odometer | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| New | 2003 | Harley FLHTCUI | 5 | 1HD1FCW303Y602178 | ☒ Personal, family, or household<br>☐ Business<br>☐ Agricultural |

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $4500.00 |
|---|---|---|---|---|
| 9.99 % | $7954.00 (e) | $20134 (e) | $23159 (e) | $27659.00 (e) |

(e) means an estimate

**YOUR PAYMENT SCHEDULE WILL BE:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| One Payment of | | |
| One Payment of | | |
| 84 Payments | 329.99 | Monthly, Beginning |
| One Final Payment of | | |

Late Charge. If payment is not received in full within 10 days after it is due, you will pay a late charge of 5% of the part of the payment that is late.
Prepayment. If you pay off all your debt early, you may be charged a minimum finance charge.
Security Interest. You are giving a security interest in the vehicle being purchased.
Additional Information. See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date, and more finance charges, and security interest.

### ITEMIZATION OF THE AMOUNT FINANCED

1. Total Cash Price
   A. Cash Price of Motor Vehicle and Accessories ... $21,500.00 (A)
      1. Cash Price Vehicle $
      2. Cash Price Accessories $
   B. Document Preparation Fee (not a governmental fee) ... $ 45.00 (B)
   C. Smog Fee Paid to Seller $
   D. Sales Tax (on A+B+C) N/A ... $1719.00 (D)
   E. Luxury Tax $
   F. Service Contract (optional) ... $1145.00 (F)
   G. Prior Credit or Lease Balance paid by Seller to $ (G)
      (see downpayment and tradein calculation)
   H. Other (to whom paid) $ (H)
      For $
   Total Cash Price (A through H) ... $24509.00
2. Amounts Paid to Public Officials
   A. License Fees $ (A)
   B. Registration/Transfer/Titling Fees ... $181.00 (B)
   C. Smog Impact Fee $ (C)
   D. Other $ (D)
   E. Other $ (E)
   Total Official Fees (A through E) ... $181.00
3. Amount Paid to Insurance Companies
   (Total premiums from Statement of Insurance column A + B) $
4. Smog Certification Fee Paid to State $
   Subtotal (1 through 4) ... $24690.00
5. Total Downpayment
   A. Gross Trade-in  Yr. ___ Make ___ $ (A)
      Model ___ Odom. ___
      VIN ___
   B. Less Prior Credit or Lease Balance $ (B)
   C. Net Trade-in (A less B) (Indicate if a negative number) $ (C)
   D. Deferred Downpayment $ (D)
   E. Manufacturer's Rebate $ (E)
   F. Other $ (F)
   G. Cash $4500.00 (G)
   Total Downpayment (C through G) ... $4500.00

### STATEMENT OF INSURANCE

#### Vehicle Insurance

| | Term | Prem. |
|---|---|---|
| Fire, Theft & Comb. | | Not Subject |
| Bodily Injury | | Ins. $ |
| Property Damage $ | | Ins. $ |
| Medical | | |

Total Vehicle Insurance Premiums $

#### AGREEMENT FOR OPTIONAL CREDIT INSURANCE

| | Term | Prem. |
|---|---|---|
| Credit Life | | (a) |

Total Credit Insurance Premiums $
Insurance Company Name
Home Office Address

### AUTO BROKER FEE DISCLOSURE
If this contract reflects the retail sale.

### SERVICE CONTRACT (Optional) You wish to purchase.

THERE IS NO COOLING OFF PERIOD

California law does not provide for a "cooling off" or other cancellation period for vehicle sales. Therefore you cannot later cancel this contract simply because you change your mind, decide the vehicle costs too much, or wish you had acquired a different vehicle. After you sign below, you may only cancel this contract with the agreement of the seller or for legal cause, such as fraud.

YOU ACKNOWLEDGE THAT YOU HAVE READ BOTH SIDES OF THIS CONTRACT BEFORE SIGNING BELOW.

YOU ACKNOWLEDGE RECEIPT OF A TRUE AND COMPLETELY FILLED IN COPY OF THIS CONTRACT AND EVERY OTHER DOCUMENT THAT YOU SIGNED DURING CONTRACT NEGOTIATIONS.

Buyer Signature X _____  Date _____   Co-Buyer Signature X _____  Date _____

Other Owner Signature X _____

Seller Signature X _____   Date _____   By _____   Title _____

## FINANCE CHARGE AND PAYMENTS

**a. How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

**b. How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order we choose.

**How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on the front on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early.

**You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time.

## YOUR OTHER PROMISES TO US

**a.** If the vehicle is damaged, destroyed, or missing.

**b.** Using the vehicle.

**c. Security Interest.** You give us a security interest in:
- The vehicle and all parts or goods installed in it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, service or gap contracts we finance for you; and
- All proceeds from insurance or service or gap contracts.

**d. Insurance you must have on the vehicle.**

**What happens to returned insurance or service or gap contract charges.**

## IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

**We will sell the vehicle if you do not get it back.**

**What we may do about optional insurance or service or gap contracts.**

## WARRANTIES SELLER DISCLAIMS

## Used Car Buyers Guide.

## Applicable Law.

## CREDIT DISABILITY INSURANCE NOTICE CLAIM PROCEDURE

The page content is largely illegible due to heavy scanning degradation and overlapping text.

Partial readable fragments include:

**CREDIT DISABILITY INSURANCE NOTICE
CLAIM PROCEDURE**

If you become disabled, you must tell us right away. You are advised to send this information to the same address to which you are normally required to send your payments, unless a different address or telephone number is given to you in writing by us as the location where we would like to be notified...

**8. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

a. **You may owe late charges.** ...

c. **You may have to pay collection costs.** You will pay...

d. **We may take the vehicle from you if you default.** ...

e. **How you can get the vehicle back if we take it** (redeem). ...

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

| ☐ Assigned with recourse | ☐ Assigned without recourse | ☐ Assigned with limited recourse |
|---|---|---|

Seller _____ By _____ Title _____

Harley-Davidson
EXTENDED
SERVICE PLAN
Ride Worry-Free
Genuine Harley
Help If a Breakdown Occurs
Fully Transferable — for Free
Lock in Repair Costs
Accessories Are Covered, Too
Convenient Payment Plan

HDM



# Your Contract



*Protecting the experience*<sup>SM</sup>    Harley-Davidson Insurance

# HARLEY-DAVIDSON
# EXTENDED SERVICE PLAN CONTRACT
### Part II



Recorded from Part I

This motorcycle service contract is for new and used Harley-Davidson motorcycles. The Part I (PROOF OF REGISTRATION) of this contract completes and validates this contract and contains the following information:

- Your contract number
- The plan/term selected
- Your name and address
- Applicable surcharge
- The selling dealer
- The MOTORCYCLE description
- The contract price
- State-specific information

This contract is not an insurance policy. This contract is between US (Harley-Davidson) and YOU (purchaser). It provides coverage (see Section 4, "Component Coverage and Expense Reimbursement Package" and Section 5, "Surcharge") only to YOU for the MOTORCYCLE and for the term selected as indicated on the Part I (PROOF OF REGISTRATION) of this contract.

### SECTION 1. DEFINITIONS

This contract contains several words and phrases that have particular meaning and appear in BOLD PRINT throughout this contract.

**"CONTRACT SALE DATE"**
The sale date of this contract to YOU by US. YOU may not claim reimbursement for any charges or costs which YOU incurred prior to the CONTRACT SALE DATE. Be sure to verify the CONTRACT SALE DATE as shown on the Part I (PROOF OF REGISTRATION) of this contract.

**"COVERED PART" and "COVERED PARTS"**
Any of those parts of YOUR MOTORCYCLE listed in Section 4, "Component Coverage and Expense Reimbursement Package" and Section 5, "Surcharge" and subject to the conditions and exclusions listed in Section 8, "Noncovered Parts and Maintenance Services" and Section 9, "Noncovered Conditions." Any part not listed in Section 4, "Component Coverage and Expense Reimbursement Package" is not covered.

**"DEDUCTIBLE"**
The portion of the REPAIR COSTS which YOU must pay (see Section 3, "Deductible" for a listing of this amount).

**"HARLEY-DAVIDSON SERVICE CENTER" and "ADMINISTRATOR"**
The organization that WE have retained to provide claim and administrative service for OUR service contract plan. OUR ADMINISTRATOR, its agents and assigns are not a party to this contract and have no liability to YOU under the terms of this contract.

**"IN-SERVICE DATE" for NEW MOTORCYCLES**
The Harley-Davidson NEW MOTORCYCLE factory warranty start date or the first day of use, regardless of the CONTRACT SALE DATE.

**"MECHANICAL BREAKDOWN" and "BREAKDOWN"**
The failure of a COVERED PART to perform that function for which it was designed due to defects in materials or faulty workmanship in its manufacturing.

**"MOTORCYCLE"**
The eligible Harley-Davidson motorcycle described in the Part I (PROOF OF REGISTRATION) of this contract.

**"NEW MOTORCYCLE"**
A MOTORCYCLE which, at the CONTRACT SALE DATE, still retains some coverage under the Harley-Davidson NEW MOTORCYCLE factory warranty. A surcharge is required in order to cover any MOTORCYCLE for which the CONTRACT SALE DATE is greater than ninety (90) days from the IN-SERVICE DATE or the mileage at the time of sale is greater than two thousand (2,000) miles, whichever occurs first.

**"REPAIR COSTS" and "COSTS"**
The actual labor and parts amounts charged by a licensed repair facility to repair or replace COVERED PARTS as required due to a BREAKDOWN, subject to the terms and conditions of this contract and as authorized by OUR ADMINISTRATOR. Parts COSTS are limited to the Harley-Davidson suggested retail price. Replacement parts may be of like kind and quality when available

and as deemed necessary by OUR ADMINISTRATOR. Labor time COSTS are limited to 125% of the repair time shown in the current year's Harley-Davidson flat-rate hourly labor guide multiplied by the repair facility's prevailing retail hourly labor rate. COSTS also include all necessary fluids, filters, seals, gaskets and taxes. YOU must pay for all diagnostic, disassembly, service, repair and other charges not authorized by OUR ADMINISTRATOR.

**"SELLING DEALER"**
The authorized Harley-Davidson motorcycle dealer from whom YOU purchased YOUR Harley-Davidson Extended Service Plan.

**"USED MOTORCYCLE"**
Any eligible MOTORCYCLE other than a NEW MOTORCYCLE which is fewer than ten (10) years old with mileage of fifty thousand (50,000) miles or fewer. YOU must purchase this contract on the date that YOU purchase the USED MOTORCYCLE.

**"WE", "US" and "OUR"**
Harley-Davidson.

**"YOU" and "YOUR"**
The purchaser of the MOTORCYCLE described in the Part I (PROOF OF REGISTRATION) of this contract.

### SECTION 2. WHAT THIS CONTRACT COVERS

**CONTRACT TERRITORY:**
This contract provides coverage in the United States, including its territories and possessions, and Canada only for failures due solely to the MECHANICAL BREAKDOWN of COVERED PARTS.

**CONTRACT TERM:**
The contract plan which YOU have selected as shown on the Part I (PROOF OF REGISTRATION) of this contract determines the CONTRACT TERM for this contract. The CONTRACT TERM for all NEW MOTORCYCLES begins on the IN-SERVICE DATE and expires when the time from the IN-SERVICE DATE reaches the limits of the contract plan. The CONTRACT TERM for USED MOTORCYCLES begins on the CONTRACT SALE DATE and expires when the time from the CONTRACT SALE DATE reaches the limits of the contract plan.

**CONTRACT COVERAGE PERIOD:**
Coverage under the terms and conditions of this contract begins on the CONTRACT SALE DATE.

**CONTRACT CHANGES:**
If any of the information contained in the Part I (PROOF OF REGISTRATION) of this contract is in error, YOU must contact US or OUR ADMINISTRATOR immediately. This contract may be changed only by endorsement issued by OUR ADMINISTRATOR.

**CONTRACT AGREEMENT:**
YOU must take YOUR MOTORCYCLE to the SELLING DEALER or an authorized Harley-Davidson repair facility for repairs. WE will pay for COSTS to repair or replace COVERED PARTS which fail due to a MECHANICAL BREAKDOWN, less the DEDUCTIBLE.

**EXCESS CHARGES:**
YOU are responsible for any charges for diagnostic and/or teardown procedures that are not listed, or are in excess of the times listed, in the current year's Harley-Davidson flat-rate hourly labor guide. YOU are also responsible for any charges for parts, labor, rental, pickup or other services beyond those authorized by OUR ADMINISTRATOR to repair a BREAKDOWN of YOUR MOTORCYCLE.

**LIMIT OF LIABILITY:**
OUR liability for any repair visit shall not exceed the fair market value of YOUR MOTORCYCLE immediately prior to the BREAKDOWN. The total amount which WE will pay for all claims paid and/or payable throughout the CONTRACT TERM shall not exceed the purchase price of YOUR MOTORCYCLE as indicated on the Part I (PROOF OF REGISTRATION) of this contract.

### SECTION 3. DEDUCTIBLE

The DEDUCTIBLE for both NEW MOTORCYCLES and USED MOTORCYCLES is fifty dollars ($50). The DEDUCTIBLE applies to each repair visit and is the amount of the REPAIR COSTS that YOU must pay. The DEDUCTIBLE does not apply to rental, pickup, or travel lodging reimbursement coverages.

### SECTION 4. COMPONENT COVERAGE AND EXPENSE
### REIMBURSEMENT PACKAGE

Coverage under this contract includes the parts of the components listed below and subject to the conditions and exclusions listed in Section 8, "Noncovered Parts and Maintenance Services" and Section 9, "Noncovered Conditions."

NEW & USED MOTORCYCLE COVERAGE:

- ENGINE
- TRANSMISSION
- PRIMARY DRIVE
- FRONT-SUSPENSION ASSEMBLY
- REAR-SUSPENSION ASSEMBLY
- STEERING ASSEMBLY
- BRAKE SYSTEM
- FUEL SYSTEM
- ELECTRICAL SYSTEM
- INSTRUMENTS and GAUGES
- SEALS and GASKETS
- TOURING PACKAGE

TOURING PACKAGE:
Not available for Buell or police motorcycles.

1. **AUDIO ENTERTAINMENT GROUP**
   Coverage limited to these listed parts:
   Receiver, tape deck, CD player.

2. **CB RADIO/INTERCOM**
   Coverage limited to these listed parts:
   Transmitter/receiver, headset, microphone, splitter, console pod, cables and jacks.

3. **FAIRING**
   Coverage limited to these listed parts:
   Mounting hardware, brackets, switches, covers, latches and hinges.

4. **SADDLEBAG/TRAVEL TRUNKS**
   Coverage limited to these listed parts:
   Bags, trunks, latches, hinges, mounting hardware.

5. **SIDECAR**
   Coverage limited to these listed parts:
   Mounting hardware, hub, spindle, wheel bearings, brake rotor, caliper, lines and fittings, suspension, latches and hinges.

EXPENSE REIMBURSEMENT PACKAGE:
Not available for police motorcycles. See Part 1 (PROOF OF REGISTRATION) for state-specific details.

1. **RENTAL REIMBURSEMENT:**
   When a BREAKDOWN makes YOUR MOTORCYCLE inoperative or unsafe to drive and YOUR MOTORCYCLE must remain in the shop overnight, WE will reimburse YOU for rental vehicle charges. The limit to this reimbursement per claim is two hundred fifty dollars ($250) not to exceed twenty-five dollars ($25) per 24-hour period. YOU must incur this expense between the date of the BREAKDOWN and the date on which covered repairs are completed. YOU must rent the substitute vehicle from a licensed rental agency.

2. **PICKUP REIMBURSEMENT:**
   When a BREAKDOWN makes YOUR MOTORCYCLE inoperative or unsafe to drive, WE will reimburse YOU for pickup charges which are not reimbursed to YOU by any road club or insurance policy or covered by the Harley-Davidson new motorcycle warranty. The limit to this reimbursement per claim is one hundred dollars ($100).

3. **TRAVEL LODGING REIMBURSEMENT:**
   When a BREAKDOWN disables YOUR MOTORCYCLE and YOU are stranded overnight and covered repairs are completed more than one hundred (100) miles from YOUR home, WE will reimburse YOU for lodging and meal expenses incurred by YOU between the date of BREAKDOWN and the date on which covered repairs are completed. The limit of this reimbursement per claim is two hundred twenty-five dollars ($225) not to exceed seventy-five dollars ($75) per 24-hour period.

## SECTION 5. SURCHARGE

An Extended Eligibility surcharge is required for all NEW MOTORCYCLES if the CONTRACT SALE DATE is greater than ninety (90) days from the IN-SERVICE DATE or the mileage at the time of sale is greater than two thousand (2,000) miles, whichever occurs first.

## SECTION 6. CONTRACT GUARANTEES

1. **NO-DEDUCTIBLE GUARANTEE:**
   No DEDUCTIBLE will be charged for any subsequent BREAKDOWN of a COVERED PART which was previously repaired or replaced under and during the term of this contract.

2. TRANSFER GUARANTEE:

YOU may transfer the remaining coverage under this contract when YOU sell YOUR MOTORCYCLE to another individual (no dealers, brokers, etc.) prior to the expiration of this contract. In order to complete this transfer process, provide OUR ADMINISTRATOR with the following information:

A. A letter from YOU within fifteen (15) days of the date of sale of YOUR MOTORCYCLE. State YOUR intention to transfer this contract and the name and the address of the purchaser.

B. A copy of the bill of sale or sale agreement showing the date and mileage on YOUR MOTORCYCLE at the time of sale.

C. Verifiable service records evidencing that YOU have complied with Section 7, "Your Responsibilities for Service and Maintenance" of this contract.

D. Proof that YOU have transferred the remaining coverage, if any, under the Harley-Davidson factory warranty.

YOU must comply with all of the above requirements within fifteen (15) days of the date of sale of YOUR MOTORCYCLE or this contract will no longer be in force.

## SECTION 7. YOUR RESPONSIBILITIES FOR SERVICE AND MAINTENANCE

READ THIS SECTION CAREFULLY. IF YOU FAIL TO MAINTAIN YOUR MOTORCYCLE ACCORDING TO THE REQUIREMENTS BELOW, COVERAGE UNDER THIS CONTRACT COULD BE RESTRICTED OR VOIDED.

1. REQUIRED MAINTENANCE:

YOU must have YOUR MOTORCYCLE serviced according to the service and maintenance schedule shown in YOUR Harley-Davidson owner's manual.

2. REQUIRED RECORD KEEPING:

YOU must keep repair orders issued by the repair facility performing the required services on YOUR MOTORCYCLE. Be sure that each repair order shows and lists in detail each of the services performed and maintenance parts replaced. If YOU perform YOUR own maintenance services, be sure to retain proof-of-purchase receipts. Make sure that the receipts clearly show the date the service was performed and the parts/lubricants replaced. Be sure to note the odometer reading from YOUR MOTORCYCLE on each receipt.

## SECTION 8. NONCOVERED PARTS AND MAINTENANCE SERVICES

During the term of this contract YOU may have to replace, repair or adjust certain parts which are NONCOVERED PARTS under the terms and conditions of this contract.

SOME EXAMPLES OF NONCOVERED PARTS:
Spark plugs and plug wires
Brake pads
Belt, hoses, lines and clamps
Battery, fuses, and fusible links
Shock absorbers, tires, wheels, and spokes
Exhaust system rust-out or discoloration
Mufflers or baffles
Filters and filter housings
Antenna mast and mirrors
Glass, lenses, sealed beams, and light bulbs
Trim, upholstery, and paint
Body parts, windshield, and their mounts
Fairing
Frame
Audio speakers and wiring, cellular telephone
Final drive chain or belt and rear sprocket

SOME EXAMPLES OF NONCOVERED SERVICES:
Scheduled maintenance services
Engine tune-up
Transmission service
Replacement or addition of fluids and lubricants
Cleaning of fuel system
Removal of carbon, sludge, varnish or other contaminants
Ignition/fuel system adjustments and calibrations
Wheel balancing or spoke adjustment
Correction of water leaks, squeaks, and rattles
Alignment of body parts

## REPLACEMENT OF NONCOVERED PARTS:

The replacement of these parts and the performance of these services are YOUR responsibility. The cost of these parts is not covered. The cost of these services is not covered.

### SECTION 9. NONCOVERED CONDITIONS

**This contract does not cover and it does not apply to:**

1.  Any loss or expense if YOUR MOTORCYCLE is used or equipped for livery, delivery or emergency purposes (except Harley-Davidson police units covered under a Harley-Davidson Police Service Contract); competitive driving, racing, contests of speed; or overloading (including occupants, cargo or tow loads) in excess of the maximum weights specified in YOUR Harley-Davidson owner's manual.

2.  Any damage due to collision or upset, breakage of glass, missile or falling objects, fire, theft, larceny, explosion, earthquake, windstorm, hail, water, flood, rust, corrosion, contamination, foreign objects, malicious mischief, vandalism, riot or civil commotion, lightning, nuclear contamination, freezing, smoke, or any loss normally covered by a motorcycle insurance policy including injury or death to any person or persons.

3.  **ANY EXPENSE INCURRED IN CONNECTION WITH REPAIRS PERFORMED WITHOUT RECEIPT OF PRIOR AUTHORIZATION FROM THE HARLEY-DAVIDSON SERVICE CENTER.**

4.  Any BREAKDOWN covered by any limited warranty, manufacturer's warranty, recalls, campaigns, repairer's guarantee, road club or any other guarantee, warranty or insurance policy.

5.  Any part which the United States Environmental Protection Agency ("EPA") has determined is emissions-related and which is included on a current list published by the EPA of such parts and is within the EPA time and mileage emissions warranty period.

6.  Any expense for the modification of, or alteration to, existing parts of systems necessitated by the replacement of obsolete, superseded or unavailable parts with current replacement parts.

7.  Any BREAKDOWN caused by sludge buildup, contaminants, foreign objects, improper amount or type of fluids, lubricants, or lack of required maintenance as shown in Section 7, "Your Responsibilities for Service and Maintenance."

8.  Any oil consumption or loss of compression or cylinder wear.

9.  Any damage resulting from continued operation or caused by YOUR failure to take reasonable precautions to prevent further damage when an apparent problem exists.

10. Any resulting or consequential damage to or from a noncovered part.

11. Any BREAKDOWN if the odometer is inoperative or has been altered or tampered with during the time YOU owned YOUR MOTORCYCLE so that the actual mileage cannot be determined.

12. Any loss of time, inconvenience, interruption of business, storage charges, or loss of profits or income or other consequential damages.

13. Any items listed in Section 8, "Noncovered Parts and Maintenance Services."

14. YOUR MOTORCYCLE if it has been modified with any alterations to the powertrain, the suspension (including tire or wheel sizes) and/or an exhaust system not approved by Harley-Davidson.

15. Fees or expenses charged for the disposal, cleanup, neutralization, removal, treatment or detoxification of environmentally unsafe materials.

16. YOUR MOTORCYCLE if Harley-Davidson has voided or rescinded the factory warranty.

17. YOUR MOTORCYCLE if it has been salvaged or if its title has been branded or if it has been declared a total loss.

### SECTION 10. CANCELLATION

1.  **PROCEDURES:**
    YOU may cancel this contract at any time by surrendering the Part I (PROOF OF REGISTRATION) and Part II to the SELLING DEALER together with a written request.

2.  **REFUND DISTRIBUTION:**
    Should the MOTORCYCLE be repossessed or deemed a total loss, YOUR cancellation rights under this contract will transfer to the lienholder as its interest may appear. WE agree, upon receipt of evidence of same, to name the lienholder as the sole payee of any resulting refund. If this contract is financed either in conjunction with the purchase of YOUR MOTORCYCLE or separately, WE will name the lienholder as an additional payee for any refund due YOU.

3.  **REFUND CALCULATION:**
    If YOUR request for cancellation is made within sixty (60) days of the purchase of this contract for NEW MOTORCYCLES or within thirty (30) days of the purchase of this contract for USED MOTORCYCLES and YOU have not filed a claim under this contract, the SELLING DEALER will refund the full purchase price of this contract to YOU. If YOU make a request for cancellation after the applicable time period above or if YOU have filed a claim under this contract, the SELLING DEALER will make a pro rata refund to YOU based upon the elapsed time from the IN-SERVICE DATE for NEW MOTORCYCLES and the CONTRACT SALE DATE for USED MOTORCYCLES, less a thirty-five dollar ($35) processing fee. OUR ADMINISTRATOR, its agents and its assigns have no liability to YOU to make any refund payments.

### SECTION 11. WHAT YOU MUST DO IN THE EVENT OF A MECHANICAL BREAKDOWN

1.  Use all reasonable means to protect YOUR MOTORCYCLE from further damage resulting from continued operation.

2.  Return YOUR MOTORCYCLE to the SELLING DEALER to determine the problem and the cause of failure. If this is not possible, call the HARLEY-DAVIDSON SERVICE CENTER for instructions.

3.  YOU must authorize any charges necessary to determine the cause of the failure. This includes necessary diagnostic and teardown charges. If it is determined that the failure does not constitute a BREAKDOWN under the terms of this contract, YOU must pay for all diagnostic, teardown and repair charges. If an inspection of YOUR MOTORCYCLE is deemed necessary by OUR ADMINISTRATOR, YOU must allow such inspection to take place before any repairs are begun. OUR ADMINISTRATOR has no obligation to inspect YOUR MOTORCYCLE and no obligation to verify its condition before or after covered repairs are completed.

4.  DO NOT agree to have repairs performed under the terms of this contract unless YOU or the repair facility has received an authorization number from the HARLEY-DAVIDSON SERVICE CENTER.

5.  YOU or the repair facility must submit all required documents to the HARLEY-DAVIDSON SERVICE CENTER before any claim can be processed for payment. These documents must include accurate dates and mileages and detailed descriptions of the parts and services performed as well as the specific charges. These documents may include repair orders, rental car bills and other receipts evidencing amounts claimed under this contract.

6.  If WE do not settle YOUR claim within sixty (60) days of OUR receipt of YOUR proof of loss, YOU may make a claim against:

    The Continental Insurance Company
    CNA Plaza
    Chicago, Illinois 60685
    312-822-5000

### SECTION 12. OUR ADMINISTRATOR

OUR ADMINISTRATOR is not a party to this contract and has no liability to YOU under the terms and conditions of this contract. Submit all claims and claim information requests to:

HARLEY-DAVIDSON SERVICE CENTER
P.O. Box 2840
Scottsdale, AZ 85252-2840
800-527-7665





Harley-Davidson Insurance
*Protecting the experience℠*

5401 (3/99)

Harley-Davidson USA | Owners | Protect Your Motorcycle | Extended Service Plan          Page 1 of 1



**HARLEY-DAVIDSON**

DEALER LOCATOR   FAQ   CART

MOTORCYCLES    GET ON A BIKE    ACCESSORIES & APPAREL    EXPERIENCE    MU

**HARLEY OWNERS GROUP®**

**PROTECT YOUR BIKE**
 Cycle Insurance
 Extended Service Plan
 Protection Plans

**SERVICE CHECK-UP**

**MOTORCYCLE SHIPPING**

**DIRECTPAY** ▣

# EXTENDED SERVICE PLAN



**Take action before your factory warranty expires. Unfortunately, you can't buy the Harley-Davidson Extended Service Plan after your factory warranty expires.**

DEALER L

### COVER YOUR BIKE

You can sit back and hope your Harley never breaks down, or you can act to protect your investment and your finances. Ride worry-free with the Harley-Davidson Extended Service Plan. It protects you from costly repairs if you're ever faced with them.

You didn't settle for less when you got your Harley®. Don't settle for anything less than the best service plan available—the Harley-Davidson Extended Service Plan.

**The Harley-Davidson Extended Service Plan**

- Fender-to-Fender protection against mechanical breakdowns lets you ride worry free for years. Plans are available for both new and used Harley-Davidson® and Buell® motorcycles.

- Locked-in repair costs: All you'll ever pay is the $50 deductible for covered repairs per visit, not per repair.

- Protected Resale: The H-D Extended Service Plan can be transferred to a new owner for free. This ensures that you'll get the highest possible resale value for your motorcycle.

- Travel Protection: Reimbursements provided for a rental car, pickup charges, hotel and your meals*. We'll never leave you stranded.

- Payment Options: You can pay for this valuable protection with the Harley-Davidson® Visa® Card, or include it with your loan from Harley-Davidson Credit.

* Restrictions apply: See actual contract (Part I and Part II) for specific coverage, exclusions and restrictions.

Legal Notice | We Care About You | Harley-Davidson Financial Services Privacy Policy | Harley-Davidson Financi
© 2001-2009 H-D. All rights reserved.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dean D. Pregerson and the assigned discovery Magistrate Judge is Margaret A. Nagle.

The case number on all documents filed with the Court should read as follows:

### CV09- 4126 DDP (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

00/00/2008  16:10:27 FAX 2136259111        NATIONWIDE LEGAL

ORIGINAL                                                                    1

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS and CHRISTINE HORNE, on behalf of themselves and all others similarly situated,<br><br>PLAINTIFF(S)<br>v.<br>HARLEY-DAVIDSON, INC., HARLEY-DAVIDSON MOTOR COMPANY, INC., and HARLEY-DAVIDSON FINANCIAL SERVICES, INC.,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV09-4126 DDP (MANx)**<br><br><br>**SUMMONS** |

TO:   DEFENDANT(S):  HARLEY-DAVIDSON, INC., HARLEY-DAVIDSON MOTOR COMPANY, INC., and HARLEY-DAVIDSON FINANCIAL SERVICES, INC.,

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _____, whose address is _____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:  ___JUN 1 0 2009___          By: *Natalie Gangaria*
                                          Deputy Clerk

                                          *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*