Angel A. Garganta (163957)
E-Mail:  Angel.Garganta@aporter.com
George F. Langendorf (255563)
E-Mail:  George.Langendorf@aporter.com
Zachary B. Allen (260694)
E-Mail:  Zachary.Allen@aporter.com
ARNOLD & PORTER LLP
275 Battery Street
Suite 2700
San Francisco, California 94111
Telephone:  415.356.3000
Facsimile:  415.356.3099

Attorneys for Defendants Harley-Davidson, Inc.,
Harley-Davidson Motor Company, Inc., and
Harley-Davidson Financial Services, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS and CHRISTINE HORNE, on behalf of themselves and all others similarly situated,<br><br>             Plaintiffs,<br><br>     vs.<br><br>HARLEY-DAVIDSON, INC., HARLEY-DAVIDSON MOTOR COMPANY, INC., and HARLEY-DAVIDSON FINANCIAL SERVICES, INC.,<br><br>             Defendants. | Case No. CV09-4126 DDP (MANx)<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**<br><br>Date:         September 21, 2009<br>Time:        10:00 a.m.<br>Courtroom:  3 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................... 1

II. ARGUMENT ........................................................................................... 2

    A. The Signed ESP Contract Is Enforceable and Properly Excludes Coverage of Charges for Tear-down and Diagnostic Charges. ............... 2

        1. Plaintiffs *Concede* that the Signed ESP Contract Is An Integrated Agreement, that Part I Incorporates Part II by Reference, and that Part II Lawfully Excludes Coverage of Tear-down and Diagnostic Fees. .................................... 2

        2. The Parol Evidence Rule Bars Evidence of Alleged Prior Representations that Contradict the Signed ESP Contract. ........... 4

        3. Plaintiffs' Allegation of Fraudulent Inducement Fails Because Reliance on Alleged Misrepresentations that Contradict the Signed ESP Contract Is Unreasonable as a Matter of Law. .................................................................... 7

        4. Plaintiffs' Claims Under the Consumer Protection Statutes Fail Because Harley-Davidson's Conduct Was Consistent with the Signed ESP Contract ........................................... 8

    B. Plaintiffs' Common Law and Statutory Consumer Protection Claims Fail Because Reliance On Alleged Misrepresentations that Contradict the Signed ESP Contract Is Unreasonable As a Matter of Law. ........................................................................................ 9

    C. Plaintiffs Have Failed to State a Claim Under Magnuson-Moss or Song-Beverly. ........................................................................... 11

        1. Plaintiffs' Magnuson-Moss and Song Beverly Claims Fail Because Plaintiffs Acknowledged Reading the ESP Contract. ................................................................................. 11

        2. Plaintiffs' Song-Beverly and Magnuson-Moss Claims are Time-Barred Because Mr. Horne's Signature on the Signed ESP Contract Shows that Plaintiffs Were on Notice of Their Claims During the Limitations Period. ........................... 12

    D. The Facts Alleged in the Complaint Do Not State a Claim to Relief that Is "Plausible On Its Face" as Required Under Rule 8 .......... 15

    E. Plaintiffs' Unjust Enrichment Claims Fail Because Plaintiffs' Rights Are Governed By the Signed ESP Contract. ............................. 17

    F. The Court Should Deny Leave to Amend .............................................. 18

III. CONCLUSION ...................................................................................... 19

1

# TABLE OF AUTHORITIES

2

3

Page(s)

## FEDERAL CASES

4

5

*Applied Elastomerics, Inc. v. Z-Man Fishing Prods.*,
    2006 WL 3251732 (N.D. Cal. Nov. 8, 2006)..........................................1, 2, 7, 8

6

7

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (May 18, 2009) ...................................................16, 17

8

9

*Baggett v. Hewlett-Packard Co.*,
    582 F. Supp. 2d 1261 (C.D. Cal. 2007) ........................................18

10

11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2008) ...................................................................16

12

13

*Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*,
    971 F.2d 272 (9th Cir. 1992) .....................................................6

14

*Clark v. Wynn's Extended Care*,
    2007 WL 922244 (N.D. Ill. March 23, 2007) .................................12

15

16

*Evans v. Chase Manhattan Bank U.S.A., N.A.*,
    2006 WL 213740 (N.D. Cal. Jan. 27, 2006) ................................8, 9

17

18

*Huynh v. Chase Manhattan Bank*,
    465 F.3d 992 (9th Cir. 2006) .....................................................14

19

20

*In re Late Fee and Over-Limit Fee Litig.*,
    2007 WL 4106353 (N.D. Cal. Nov. 16, 2007)..............................1, 9

21

22

*Intelligraphics, Inc. v. Marvell Semiconductor, Inc.*,
    2008 WL 3200212 (N.D. Cal. May 5, 2009) ................................10

23

24

*Marcellos v. Dominguez*,
    2008 WL 1820683 (N.D. Cal. 2008)..........................................15

25

*McCoy v. Chase Manhattan Bank, U.S.A.*,
    559 F.3d 963 (9th Cir. March 16, 2009) .........................................9

26

27

*Planet Coffee Roasters, Inc. v. Dam*,
    2009 WL 2486457 (C.D. Cal. Aug. 12, 2009) ................................16

28

*Plascencia v. Lending 1st Mortgage,*
   583 F. Supp. 2d 1090 (N.D. Cal. 2008)................................................................14

*Roots v. Ready Made Garments v. Gap Inc.,*
   2008 WL 239254 (N.D. Cal. Jan. 28, 2008) .........................................................4

*Salemo v. E-Trade Sec.,*
   2005 WL 6124833 (E.D. Cal. May 9, 2005)..........................................................3

*Shein v. Canon, U.S.A., Inc.,*
   2009 WL 1774287 (C.D. Cal. June 22, 2009).......................................................18

*Spiegler v. Home Depot U.S.A., Inc.,*
   2008 WL 2699787 (C.D. Cal. June 30, 2008)........................................................8

*Williams v. Ford Motor Co.,*
   980 F. Supp. 938 (N.D. Ill. 1997)........................................................................12

*Williams v. Gerber Prods. Co.,*
   552 F.3d 934 (9th Cir. 2008)...........................................................................11, 12

**STATE CASES**

*Alling v. Universal Mfg. Corp.,*
   5 Cal. App. 4th 1412 (1992)..................................................................................5

*Banco do Brasil, S.A., v. Latian, Inc.,*
   234 Cal. App. 3d 973 (1991)................................................................1, 2, 4, 5, 6

*Bank of Am. Nat'l Trust & Savings Ass'n v. Pendergrass,*
   4 Cal. 2d 258 (1935)......................................................................................4, 5, 6

*Bank of Am. v. Lamb Fin. Co.,*
   179 Cal. App. 2d 498 (1960)..................................................................................6

*Boyer v. Jensen,*
   129 Cal. App. 4th 62 (2006)................................................................................13

*Casa Herrera, Inc. v. Beydoun,*
   32 Cal. 4th 336 (2004)...........................................................................................5

*Conroy v. Regents of Univ. of Cal.,*
   45 Cal. 4th 1255 (April 6, 2009) ..........................................................................9

*Continental Airlines, Inc. v. McDonnell Douglas Corp.*,
    216 Cal. App. 3d 388 (1989) .................................................................6, 7

*E-Fab, Inc. v. Accountants, Inc. Svcs.*,
    153 Cal. App. 4th 1308 (2007) ...............................................................14

*Fox v. Ethicon Endo-Surgery, Inc.*,
    35 Cal. 4th 797 (2005) ............................................................................14

*Hadland v. NN Investors Life Ins. Co.*,
    24 Cal. App. 4th 1578 (1994) ...................................................................9

*Hall v. Time*,
    158 Cal. App. 4th 847 ............................................................................11

*Hunt v. County of Shasta*,
    225 Cal. App. 3d 432 (1990) ..................................................................13

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (May 18, 2009) ........................................................10, 11

*Kruse v. Bank of Am.*,
    202 Cal. App. 3d 38 (1988) ......................................................................7

*Lantzy v. Centex Homes*,
    31 Cal. 4th 363 (2003) ............................................................................15

*Larsen v. Nissan N. Am.*,
    2009 WL 1766797 (Cal. App. June 23, 2009) ....................................4, 18

*Lovejoy v. AT&T Corp.*,
    92 Cal. App. 4th 85 (2001) .....................................................................11

*McKelvey v. Boeing N. Am.*,
    74 Cal. App. 4th 151 (1999) ...................................................................14

*Morey v. Vanucci*,
    64 Cal. App. 4th 904 (1998) .....................................................................5

*Price v. Wells Fargo Bank*,
    213 Cal. App. 3d 465 (1989) ....................................................................6

*Robinson Helicopter Co. v. Dana Corp.*,
    34 Cal. 4th 979 (2004) ..............................................................................8

- iv -

*Simmons v. Cal. Inst. of Tech.*,
    34 Cal. 2d 264 (1949) ............................................................................6

*Spray, Gould & Bowers v. Assoc. Int'l. Ins. Co.*,
    71 Cal. App. 4th 1260 (1999) ...........................................................15

*U.S. Ecology v. State of Cal.*,
    129 Cal. App. 4th 887 (2005) ...........................................................10

## STATUTES AND RULES

Cal. Civ. Code § 1625 ..............................................................................4

Cal. Civ. Code § 1794.41 .......................................................................12

Cal. Code Civ. Proc. § 1856(a) ................................................................4

Cal. Code Civ. Proc. § 1856(d) ................................................................4

Cal. Evid. Code § 622 ..............................................................................2

Fed. R. Civ. Proc. 8 ......................................................................15, 16, 17

Local Rule 11-6 .......................................................................................19

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
Case No. 09-4126

## I.      INTRODUCTION

Plaintiffs identify *no case* where a party -- consumer or otherwise -- who has signed an integrated contract is allowed to ignore the terms of that contract based solely on alleged prior representations that contradict it, even amid allegations of fraud.  This is fatal, because Plaintiffs *do not dispute* that Part I of the signed ESP contract incorporates Part II by reference, that the ESP contract is an integrated agreement that excludes coverage of teardown and diagnostic fees, or that they relied on alleged misrepresentations that contradict the signed ESP contract.  Instead, Plaintiffs contend that *even though* the contract is integrated and enforceable, and *even if* the alleged misrepresentations contradicted it, they have stated a claim because their allegation of fraud "changes the legal landscape entirely" and therefore the contract has no legal force.  Opp'n. at 14.

Plaintiffs are wrong.  They ignore the legal doctrines governing the intersection of tort and contract law, including the exclusion of extrinsic evidence to contradict the terms of a written agreement, even to prove fraud, *see Banco do Brasil, S.A., v. Latian, Inc.*, 234 Cal. App. 3d 973, 1010 (1991); the rule that reliance on a representation that contradicts a written contract is unreasonable as a matter of law, *see Applied Elastomerics, Inc. v. Z-Man Fishing Prods.*, 2006 WL 3251732 (N.D. Cal. Nov. 8, 2006); and cases holding that the consumer protection laws are not a license to rewrite contracts, *see In re Late Fee and Over-Limit Fee Litig.*, 2007 WL 4106353 (N.D. Cal. Nov. 16, 2007).

These rules bar all of Plaintiffs' claims, including those under Song-Beverly and Magnuson-Moss, because they preclude allegations of fraud based on the subject matter of an enforceable agreement.  Furthermore, neither Plaintiffs' assertions that the Complaint raises issues of fact, nor any new facts alleged in the proposed Amended Complaint, preclude dismissal.  Harley-Davidson's motion assumes the facts as pled, and shows that those facts fail to state a plausible claim.

This case is simple: Plaintiffs fail to state a claim because they plead that Mr. Horne read and signed a contract that properly excludes coverage of the charges they complain about.  This Court should therefore dismiss the Complaint without leave to amend.

## II.   ARGUMENT

### A.   The Signed ESP Contract Is Enforceable and Properly Excludes Coverage of Charges for Tear-down and Diagnostic Charges.

#### 1.   Plaintiffs *Concede* that the Signed ESP Contract Is An Integrated Agreement, that Part I Incorporates Part II by Reference, and that Part II Lawfully Excludes Coverage of Tear-down and Diagnostic Fees.

In the Motion to Dismiss, Harley-Davidson showed that Part I of the ESP incorporates Part II by reference, *see* Defs.' Mot. at 6-8, that the ESP contract is a fully integrated agreement, s*ee id*. at 11-12 (quoting integration clause), and that Part II of the ESP contract excludes coverage of teardown and diagnostic fees in three separate places, *see id*. at 5.  Plaintiffs do not contest any of these points.  *See* Opp'n at 14 (arguing only that the signed contract is "irrelevant" because Plaintiffs' claims do not "arise from the four corners of the ESP").  As a result, the contract is a *binding admission* of the facts recited therein.  Cal. Evid. Code § 622.  Therefore, because Mr. Horne signed Part I, and by doing so "acknowledge[d] having read part II," Compl. ¶ 12,  Plaintiffs are bound by the ESP contract, including its terms and conditions.

Plaintiffs assert that the cases cited by Harley-Davidson are inapplicable because they "do not involve allegations of fraud, which change[s] the legal landscape altogether."  *See* Opp'n at 14.  But both the premise of this argument, that Harley-Davidson's cases do not involve fraud,[1] and the conclusion, that a fraud allegation renders an otherwise enforceable contract meaningless, are incorrect.

---

[1] In fact, many of the cases cited by Harley-Davidson in the Motion to Dismiss involved allegations of fraud.  *See, e.g.*, *Banco do Brasil,* 234 Cal. App. 3d at 1010 (finding the parol evidence rule bars allegations of fraud in light of the existence of an integrated agreement); *Applied Elastomerics,* 2006 WL 3251732 (rejecting argument of fraudulent inducement because reliance was unjustifiable as a matter of

(Footnote Cont'd on Following Page)

1     For example, in *Salemo* -- one of the cases that Plaintiffs assert does not involve

2  fraud -- the plaintiff was a federal prisoner incarcerated in Texas who opened an E-

3  Trade account by completing by mail an "express application" for a margin account.

4  2005 WL 6124833, at *1.  The application contained a clause stating: "I understand

5  that this account is governed by a pre-dispute arbitration clause which is on page 7,

6  paragraph 31B, of the E*Trade Customer Agreement, which I will receive from

7  E*Trade upon account activation."  *Id*.  The plaintiff alleged, however, that when he

8  received the letter confirming the activation of his account, no copy of the Customer

9  Agreement was included.  *Id*.  The plaintiff filed an action against E*Trade, alleging

10  both "fraud under 10b of the Exchange Act" and  "common law fraud," and E*Trade

11  moved to compel arbitration based on the arbitration clause in the Customer

12  Agreement.  *Id*.  In response to E*Trade's motion, the plaintiff argued, as Plaintiffs do

13  here, that he was fraudulently induced to enter into the contract.  *Id*. at *3 n.6.  Despite

14  these allegations, the court rejected the plaintiff's allegations of fraud, found that the

15  Customer Agreement, including the arbitration provision, was incorporated by

16  reference, and dismissed the plaintiff's claims.  *Id*. at *4.

17     Accordingly, far from immunizing the Complaint from a defense based on an

18  enforceable contract, Plaintiffs' allegations of fraud in connection with the ESP merely

19  implicate the rules that govern the intersection of contract and tort law.  As discussed

20  in the Motion to Dismiss, *three* such rules -- the parol evidence rule, the rule that

21  reliance on a promise contradicted by a writing is unreasonable as a matter of law, and

22  that consumer protection statutes do not exist to rewrite consumer contracts --

23  independently defeat Plaintiffs' allegations of fraud, and as a result render the contract

24  valid and enforceable.

25

26

27
(Footnote Cont'd From Previous Page)
law in light of the written agreement to the contrary); *Salemo v. E-Trade Sec.*, 2005
28 WL 6124833 (E.D. Cal. May 9, 2005) (rejecting assertion of fraudulent inducement).

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
Case No. 09-4126

2.      **The Parol Evidence Rule Bars Evidence of Alleged Prior Representations that Contradict the Signed ESP Contract.**

The parol evidence rule bars the introduction of extrinsic evidence to vary the terms of an integrated agreement.  *See* Mot. at 11 (citing Cal. Civ. Code § 1625, and Cal. Code Civ. Proc. § 1856(a)).  This "is not merely a rule of evidence excluding precontractual discussions . . . .  It is a rule of substantive law," and whether the rule applies is a question "of law to be determined by the court."  *Banco do Brasil*, 234 Cal. App. 3d at 1000-01 (citations and quotation marks omitted); Cal. Code Civ. Proc. § 1856(d).  The determination may be made at the pleading stage.  *See Larsen v. Nissan N. Am.*, 2009 WL 1766797, *5 (Cal. App. June 23, 2009) ("Because these are oral representations that purport to vary the terms of the written warranty booklet, the parol evidence rule would preclude their admission.  The allegations therefore fail to state a claim.") (citations omitted); *Roots v. Ready Made Garments v. Gap Inc.*, 2008 WL 239254 (N.D. Cal. Jan. 28, 2008) (granting motion to dismiss fraud claim under parol evidence rule).

The ESP contract here is an integrated agreement, which Plaintiffs do not dispute, and the Complaint relies on a prior oral promise that contradicts the terms of the ESP contract.  *Id.*  This evidence is plainly excluded under the rule, particularly in California where the fraud exception does not apply to allegations of promises that directly contradict written agreements.  *Bank of Am. Nat'l Trust & Savings Ass'n v. Pendergrass*, 4 Cal. 2d 258, 263 (1935).  As a result, instead of attempting to show why this is not so, Plaintiffs now assert, in a proposed Amended Complaint,[2] that in fact they did not rely on the alleged oral promise, but instead on a "brochure" that advertised a "locked-down" cost of $50 for repairs under the Plan.  *See*, *e.g.*, Opp'n at

_____

[2] In response to the Defendants' Motion to Dismiss, Plaintiffs offer to amend their Complaint to allege entirely new facts, to clarify other allegations, and to rely on new statutory provisions.  Accordingly, if leave to amend is granted -- although it should not be -- Harley-Davidson should be permitted to contest the sufficiency of the Amended Complaint.

- 4 -

17-18 ("Harley wholly ignores that the Hornes' claims are based on Harley's disclosure obligations and written misrepresentations . . . . [T]he Hornes allege oral misrepresentations . . . merely because they are consistent with the written misrepresentations Harley made, not as the unlawful misconduct itself.").[3]

First, whether the alleged misrepresentation is oral or written is of no significance because as the California Supreme Court has recently stated, "the parol evidence rule generally prohibits the introduction of any extrinsic evidence, *whether oral or written*, to vary, alter or add to the terms of an integrated written instrument." *Casa Herrera, Inc. v. Beydoun*, 32 Cal. 4th 336, 343 (2004) (emphasis added). *See also Alling v. Universal Mfg. Corp.*, 5 Cal. App. 4th 1412, 1433 (1992) (same); *Morey v. Vanucci*, 64 Cal. App. 4th 904, 913 n.4 (1998) (same).

Second, the California Supreme Court has held that the fraud exception to the parol evidence rule does not apply where, as here, the alleged misrepresentation is a promise that directly contradicts the later written agreement. *Pendergrass*, 4 Cal. 2d at 263. As the court in *Banco do Brasil* explained:

> Over 50 years ago, our Supreme Court made a very defensible policy choice which favored the considerations underlying the parol evidence rule over those supporting a fraud cause of action. In [*Pendergrass*] . . . [t]he court stated, "Our conception of the rule which permits parol evidence of fraud to establish the invalidity of the instrument is that it must tend to establish some independent fact or representation, some fraud in the procurement of the instrument or some breach of confidence concerning its use, and not a promise directly at variance with the promise of the writing."

---

[3] It is unclear how Harley-Davidson could have "wholly ignored" an allegation that Plaintiffs make for the first time in their Opposition.

*Banco do Brasil,* 234 Cal. App. 3d at 1010 (quoting *Pendergrass*, 4 Cal. 2d at 263). *See also Bank of Am. v. Lamb Fin. Co.*, 179 Cal. App. 2d 498, 502 (1960) ("[I]f, to induce one to enter into an agreement, a party makes an independent promise without intention of performing it, this separate false promise constitutes fraud which may be proven to nullify the main agreement; *but if the false promise relates to the matter covered by the main agreement and contradicts or varies the terms thereof, any evidence of the false promise directly violates the parol evidence rule and is inadmissible.*") (emphasis added); *Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465 (1989) (following *Pendergrass*); *Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*, 971 F.2d 272, 281 (9th Cir. 1992) (same).[4]

In their opposition, Plaintiffs make no attempt to show why the *Pendergrass* rule does not exclude evidence of the alleged misrepresentations. And in fact, the entire premise of the Complaint, even as Plaintiffs propose to amend it, is that the ESP contract contradicted the oral and written extrinsic evidence upon which they supposedly relied. *See, e.g.*, Compl. ¶ 19 (alleging that the ESP contract "*contradicts* both what the Hornes were told prior to and at the time of purchase") (emphasis added); Opp'n at 7 (arguing that Part II of the ESP contract excludes coverage for tear-down and diagnostic fees "in *direct contradiction* to Harley's representations concerning the $50 deductible") (emphasis added).[5]

---

[4] The *Pendergrass* rule does not swallow the fraud exception to the parol evidence rule; it only limits that exception to fraud that does not contradict the terms of the contract. For example, if a consumer were induced to purchase a motorcycle by the promise that the proceeds of the sale were going to be given to charity, but that promise turned out to be fraudulent, evidence of the oral promise would be admissible under the fraud exception to the parol evidence rule, Cal. Civ. 1856(g), and not excluded by the *Pendergrass* rule. *See, e.g., Simmons v. Cal. Inst. of Tech.*, 34 Cal. 2d 264, 274 (1949) ("These promises . . . as to the use of the royalties were the fraudulent inducement, or motive, for the contract, but they were not incorporated in or superseded by the terms of the agreement as to payment."). Here, however, the alleged promise contradicts, and was superseded by, the terms of the contract itself.

[5] Plaintiffs make no argument the *Pendergrass* rule does not exclude all evidence of the misrepresentations alleged in Complaint.

This rule too, applies to both written and oral evidence. In *Continental Airlines, Inc. v. McDonnell Douglas Corp.*, 216 Cal. App. 3d 388 (1989), for example, the court

(Footnote Cont'd on Following Page)

- 6 -

Consequently, because the Complaint is premised on extrinsic evidence that contradicts the ESP contract and that is therefore excluded by the parol evidence rule, Plaintiffs' claims should be dismissed.

**3.      Plaintiffs' Allegation of Fraudulent Inducement Fails Because Reliance on Alleged Misrepresentations that Contradict the Signed ESP Contract Is Unreasonable as a Matter of Law.**

Plaintiff asserts that the contract cannot bar their claims, which are grounded in fraud, because it was fraudulently induced.  This argument requires reasonable reliance, and thus fails because reliance on an alleged misrepresentation is unreasonable as a matter of law where it is contradicted by a subsequent written agreement.  *See* Mot. at  17.  *See also Kruse v. Bank of Am.*, 202 Cal. App. 3d 38, 54 (1988) (rejecting argument that contract was fraudulently induced because "the essential element of justifiable reliance" was absent).  In *Applied Elastomerics*, for example, the court rejected a fraudulent inducement argument asserted to prevent enforcement of a contract on exactly this rationale:

> Defendant alleges that Mr. Chen represented that Plaintiff would maintain exclusivity and that it had been enforcing and would continue to enforce its patents . . . .  However, as discussed above, the *Agreement contradicts any such representation by providing that Plaintiff had the option to maintain exclusivity at its sole discretion.  Therefore, Defendant's reliance on any contrary representation is unjustified as a matter of law.*  Accordingly, Defendant *cannot state a claim for fraud in the inducement* based on allegations that Plaintiff represented that it would maintain exclusivity.

----

(Footnote Cont'd From Previous Page)

excluded evidence of "the unequivocal promise *in the brochures*" that the fuel lines would not rupture in light of the more qualified statement in the contract saying that failure of the landing gear was "not likely" to rupture.  *Id*. at 419.

2006 WL 3251732, at *6 (emphasis added).

Here, as in *Applied Elastomerics*, there is no justifiable reliance because the alleged misrepresentations directly contradict the terms of the signed ESP contract that Mr. Horne signed, and consequently there is no claim for fraudulent inducement.  It follows that, because there is no fraudulent inducement, the ESP contract is fully enforceable and the tear-down and diagnostic charges were properly excluded from coverage under the ESP.[6]

### 4.   Plaintiffs' Claims Under the Consumer Protection Statutes Fail Because Harley-Davidson's Conduct Was Consistent with the Signed ESP Contract.

Consumer protection claims are not a license to rewrite consumer contracts, and as a result, the ESP contract bars Plaintiffs' claims under the UCL and CLRA.  *See* Mot. at 10 (citing, *e.g.*, *Spiegler v. Home Depot U.S.A., Inc.*, 2008 WL 2699787 (C.D. Cal. June 30, 2008).  Plaintiffs make no attempt to refute this as a matter of law, but instead attempt to distinguish the cases cited by Harley-Davidson on their facts.  *See* Opp'n at 21 ("Thus, the cases Harley cites in support of dismissal concern legal theories and allegations of fact that meaningfully differ from the Hornes' case as they have alleged it.").

But the factual differences Plaintiffs identify do not alter the principle that actions consistent with a valid contract, even as to consumers, cannot give rise to allegations of fraud.  In *Evans v. Chase Manhattan Bank U.S.A., N.A.*, 2006 WL 213740, at *6 (N.D. Cal. Jan. 27, 2006), for example, the plaintiffs alleged that the

---

[6] Plaintiffs rely on *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979 (2004), for the proposition that a fraud claim prevents enforcement of a contract.  *See* Opp'n at 15.  That case is inapposite: it addresses whether the plaintiffs in a products liability setting can recover in both tort and contract if there was personal injury.  The Court held that on the facts before it, tort damages were permissible, but stated that its holding was "narrow in scope and limited to a defendant's affirmative misrepresentations on which a plaintiff relies and which expose a plaintiff to liability for personal damages independent of plaintiff's economic loss."  In short, *Robinson Helicopter* has nothing to do with this case, but even if it did it would not assist Plaintiffs because it authorizes tort remedies for claims otherwise sounding in contract only in cases where there is *personal injury*, which is not alleged here.

bank-defendants increase of interest rates violated the Truth-in-Lending Act and the CLRA.  The *Evans* court rejected these claims and found that because the defendant's conduct was consistent with the terms of its contract with consumers, it "*cannot plausibly be labeled a deception.*"  *Id.* at *6.  Other courts have reached the same conclusion.  *See, e.g.*, *In re Late Fee and Over-Limit Fee Litig.*, 2007 WL 4106353 (2007); *McCoy v. Chase Manhattan Bank, U.S.A.*, 559 F.3d 963, 971 (9th Cir. March 16, 2009) (rejecting consumer fraud claims because the defendant's conduct was permitted by the relevant contract).

Here, Harley-Davidson's exclusion of tear-down and diagnostic fees is consistent with the terms of the ESP contract, which Mr. Horne signed and "acknowledges having read."  Compl. ¶ 12.  Thus, as in *Evans* and the cases cited above, there is no deception or unfairness sufficient to state a claim under California's consumer protection statutes.

**B.      Plaintiffs' Common Law and Statutory Consumer Protection Claims Fail Because Reliance On Alleged Misrepresentations that Contradict the Signed ESP Contract Is Unreasonable As a Matter of Law.**

Plaintiffs' claims that require justifiable reliance -- *i.e.* all those other than Song-Beverly and Magnuson-Moss -- fail because reliance is unreasonable as a matter of law where it contradicted by a subsequent agreement, and Plaintiffs' case is premised on the contradiction between the representations they supposedly relied upon and the ESP contract.  *See* Mot. at 17-19 (citing, *e.g., Hadland v. NN Investors Life Ins. Co.*, 24 Cal. App. 4th 1578 (1994)).  Plaintiffs, in fact, *do not even argue* that their reliance was reasonable; instead they assert that they are not required to allege reliance *at all*.  *See* Opp'n at 21-25 (declining to argue that reliance was justifiable).

First, as to the common law claims of fraudulent inducement, deceit and promissory estoppel, Plaintiffs are simply incorrect.  As set forth in the Motion to Dismiss, reasonable reliance is an element of those causes of action.  *See* Mot. at 18 n.9 (citing *Conroy v. Regents of Univ. of Cal.*, 45 Cal. 4th 1255 (April 6, 2009) to show

- 9 -

that justifiable reliance is required to allege deceit; *U.S. Ecology v. State of Cal.*, 129 Cal. App. 4th 887, 901 (2005) for the rule that reliance must be reasonable to allege promissory estoppel; and *Intelligraphics, Inc. v. Marvell Semiconductor, Inc.*, 2008 WL 3200212, at *11 (N.D. Cal. May 5, 2009) for the rule that "one of the elements of fraudulent inducement is reasonable reliance on the alleged misrepresentation"). Plaintiffs do not dispute this, or even argue that the element of justifiable reliance is present, and thus concede that their common law causes of action do not state a claim. *See* Opp'n at 21-25 (discussing only the reliance requirement only under the UCL).

Second, Plaintiffs' argument fails even under the consumer protection statutes. Plaintiffs rely on the California Supreme Court's recent decision in *In re Tobacco II Cases* for the proposition that "a consumer protection claim does not 'need to demonstrate individualized reliance on specific misrepresentations to satisfy the reliance requirement'" and that a plaintiff is not required to show reliance on a particular advertisement "with an unrealistic degree of specificity." *See* Opp'n at 22 (citing *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (May 18, 2009)). This may be true, but it is beside the point. Harley-Davidson has not and does not argue that Plaintiffs have failed to plead reliance; rather Harley-Davidson contends that the reliance alleged on the face of the Complaint is unreasonable as a matter of law.

The *Tobacco II* Court reiterated that the UCL requires actual reliance. 46 Cal. 4th at 328 (holding that Proposition 64 "imposes an *actual reliance* requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong"). And while such reliance may be alleged in some cases by a showing that the representation was material, nothing in *Tobacco II* indicates that such a showing will suffice where the reliance was unreasonable. Indeed, this much is evident in the requirement that the representation is material only if a "reasonable man" would consider it important. *Id*. at 327. If unreasonable reliance were allowed, then again, any contract -- indeed any representation -- could be challenged for any reason under

- 10 -

the UCL.  Not surprisingly this is nowhere to be found in *Tobacco II* or any of the cases cited by Plaintiffs.

Thus it remains the case under the UCL that reliance, however proved, must be justifiable.  *See Hall v. Time*, 158 Cal. App. 4th 847, 855 at n.2 (2008) (concluding that *justifiable* reliance is required under the UCL) (emphasis added).  Indeed, this principle is reflected in the few cases cited by Plaintiffs.  *See* Opp'n at 24 ("In a concealment case 'there is no problem with reliance, since *the only type of reliance required is that the plaintiff must have been unaware of the fact* and would not have acted as he did if he had known of the concealed or suppressed fact.") (emphasis added) (citing *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 97 (2001)).

Plaintiffs include in their Opposition a lengthy discussion of *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008).  *See* Opp'n at 23-24.  But that case addressed whether a consumer should be required to look past the label on a juice bottle and read the nutrition facts panel.  That is a far cry from whether a consumer should be held to the terms of a contract that he signed.  *See* Mot. at 4.

Here, as described above, Plaintiffs cannot have been reasonably unaware of the existence of Part II, because it is repeatedly referenced in Part I, and because by signing Part I Mr. Horne acknowledged reading it.  Plaintiffs make no effort to show that their reliance on the alleged misrepresentations was justifiable (or that it would be reasonable to consider them material), and thus their common law and statutory consumer protection claims fail.

## C.  Plaintiffs Have Failed to State a Claim Under Magnuson-Moss or Song-Beverly.

### 1.  Plaintiffs' Magnuson-Moss and Song Beverly Claims Fail Because  Plaintiffs Acknowledged Reading the ESP Contract.

Plaintiffs argue that, despite the fact that Mr. Horne signed Part I of the ESP contract and by doing so "acknowledge[d] having read Part II," the question of whether they received the ESP contract as required by under Magnuson-Moss and Song-Beverly remains one of fact.  *See* Opp'n at 10 (describing the question of

- 11 -

whether the Hornes received Part II of the ESP as "a factual dispute [that] is not a proper basis for dismissal of the complaint."). That is incorrect because, as discussed above, Mr. Horne signed Part I, and by doing so "acknowledge[d] having read Part II," neither of which would be possible had he not received the ESP contract. Not surprisingly, Plaintiffs cite *no cases* where an alleged failure-to-receive claim survives the existence of a signed contract.

As to Song-Beverly, Plaintiffs -- after having alleged violations of that statute's warranty provisions -- now propose to amend their Complaint to allege that Harley-Davidson did not deliver the ESP as required by the portion of the statute governing service contracts. *See* Opp'n at 12 (citing Cal. Civ. Code § 1794.41). They offer no explanation, however, of how Mr. Horne signed Part I of the ESP or acknowledged having read Part II, without the contract being delivered to him.[7]

As to Magnuson-Moss, Plaintiffs cite two cases, *Clark v. Wynn's Extended Care*, 2007 WL 922244 (N.D. Ill. March 23, 2007) and *Williams v. Ford Motor Co.*, 980 F. Supp. 938, 944 (N.D. Ill. 1997). Neither *Clark* nor *Williams*, however, involve an alleged failure-to-receive, much less such an allegation in combination with a signed service contract, and thus neither case suggests any reason why the signed contract does not preclude the argument that Part II of the ESP was not received.

**2.    Plaintiffs' Song-Beverly and Magnuson-Moss Claims are Time-Barred Because Mr. Horne's Signature on the Signed ESP Contract Shows that Plaintiffs Were on Notice of Their Claims During the Limitations Period.**

Plaintiffs *concede* that a four-year statute of limitation applies to the Song-Beverly and Magnuson-Moss claims, and that those claims accrued in 2002 at the time of the alleged misrepresentations and failure-to-disclose. *See* Opp'n at 30-32.

---

[7] Plaintiffs argue that whether the Hornes received Part II of the ESP contract is a question of fact. That is not correct, but even if it were, then the same question of fact will arise as to each member of the purported nationwide class, and the resulting individualized inquiry will preclude class certification.

1   Nonetheless, they argue that Harley-Davidson has not met its "heavy burden" of

2   showing that the limitations period has run, and that their invocation of the discovery

3   rule and equitable estoppel present issues of fact.  *Id*. at 32.

4        This is not correct.  First, as Plaintiffs acknowledge, where it is evident from the

5   face of the complaint itself that the claim is barred by the statute of limitations, then

6   dismissal -- even at the pleading stage -- is appropriate based on the statue of

7   limitations.  *Hunt v. County of Shasta*, 225 Cal. App. 3d 432, 441 (1990) ("A pleading

8   which on its face is barred by the statute of limitations does not state a viable cause of

9   action and is subject to judgment on the pleadings); *Boyer v. Jensen*, 129 Cal. App. 4th

10   62, 69 (2006) (granting judgment on the pleadings on statute of limitations grounds

11   where it was "clear from the pleadings" that claims were time-barred).

12        Here, Plaintiffs allege that on July 31, 2002, they signed Part I of the ESP

13   contract, and that by doing so they acknowledged reading Part II.  *See* Compl. ¶ 12.

14   They further allege that prior to or at that same time, they received an oral promise

15   from their Harley-Davidson dealer of an unqualified $50 deductible, and they now

16   seek leave to amend their Complaint to include the additional allegation that they saw

17   a "brochure" suggesting payments would be "Locked-down" and would not exceed

18   $50.  Opp'n at 2, 5.  Plaintiffs also allege that the only reason Harley-Davidson is in

19   violation of Song-Beverly and Magnuson-Moss is that it failed to provide Part II.  *Id*.

20   at 9-10.  In other words, all the elements of Plaintiffs' failure-to-disclose claims were

21   complete on or about July 31, 2002, as shown on the face of the Complaint.  As a

22   result, as Plaintiffs concede, the causes of action under Song-Beverly and Magnuson-

23   Moss accrued at that time.  Thus, unless Plaintiffs can show that the discovery rule or

24   equitable estoppel prevents the running of the statute of limitations, their allegations

25   are time-barred.  Neither exception applies here.

26        First, where the discovery rule is invoked, "a plaintiff whose complaint *shows*

27   *on its face* that his claim would be barred without the benefit of the discovery rule *must*

28   *specifically plead facts* to show (1) the time and manner of discovery *and* (2) the

- 13 -

inability to have made earlier discovery despite reasonable diligence.  *The burden is on the plaintiff* to show diligence, and conclusory allegations will not withstand demurrer."  *McKelvey v. Boeing N. Am.*, 74 Cal. App. 4th 151, 160 (1999) (emphasis added) *superseded by statute on other grounds.  See also Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) ("In assessing the sufficiency of the allegations of delayed discovery*, the court places the burden on the plaintiff* to "show diligence . . . conclusory allegations will not withstand demurrer."); *E-Fab, Inc. v. Accountants, Inc. Svcs.*, 153 Cal. App. 4th 1308, 1320 (2007) (emphasis added).  Thus where a plaintiff invokes the discovery rule to avoid a time-bar that is evident from the complaint, California law places the burden on the *plaintiff* to plead sufficient facts to support it.  Here, as described above, Plaintiffs have not pled "the inability to have made earlier discovery despite reasonable diligence."

Instead, Plaintiffs plead the opposite.  Plaintiffs' allegation that Mr. Horne signed Part I, and by doing so "acknowledge[d] having read Part II" shows that he had actual notice of the terms and conditions of the ESP contract *in the form of the contract he signed*.  At a bare minimum, it is beyond dispute that by signing the ESP contract, Mr. Horne obtained inquiry notice of Part II sufficient to preclude any argument that he exercised the "reasonable diligence" required to invoke the discovery rule.[8]

Second, Plaintiffs argue that their allegation of equitable estoppel precludes dismissal at the pleading stage, *see* Opp'n at 30-31, but the Opposition only cites cases involving equitable *tolling*, a separate doctrine that Plaintiffs have not alleged is applicable here.[9]  It matters little, because neither doctrine applies here.  Equitable

---

[8] Moreover, if this is a question of fact, then it will be a question of fact for every member of Plaintiffs' putative nationwide class.  Courts routinely cite the existence of varying statute of limitations defenses as grounds for denying class certification.

[9] *See* Opp'n at 30-31 (citing *Plascencia v. Lending 1st Mortgage*, 583 F. Supp. 2d 1090, 1097 (N.D. Cal. 2008) ("[T]he complaint does not foreclose the possibility that equitable *tolling* may apply to their TILA claim for damages") (emphasis added), and *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003-04 (9th Cir. 2006) ("Generally, the applicability of equitable *tolling* depends on matters outside the pleadings . . .)).

- 14 -

tolling requires that "despite due diligence, a plaintiff does not have reasonable

opportunity to discover" what was allegedly concealed from them.  *Marcellos v.*

*Dominguez*, 2008 WL 1820683, at *4 (N.D. Cal. 2008)   Plaintiffs, however, did have

a reasonable opportunity to discover the existence of Part II, because Part I, which Mr.

Horne signed, expressly refers to it in several places.[10]  *See* Mot. at 6.

Plaintiffs assertion of equitable estoppel is even further afield, because it

requires both that "the party asserting the estoppel must be ignorant of the true state of

facts," *Spray, Gould & Bowers v. Assoc. Int'l. Ins. Co.*, 71 Cal. App. 4th 1260, 1268

(1999), and that the defendant made a representation "bearing on the *necessity* of

bringing a timely suit," *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 384 n.18 (2003)

(emphasis in original) (citations omitted).  Here, as above, Plaintiffs cannot show that

they were "ignorant of the true state of the facts," because they signed Part I, which

plainly refers to Part II in several places.  *See* Mot. at 6.  Moreover, the alleged

misrepresentations have no bearing on the necessity of filing suit, and thus equitable

estoppel is not applicable.

As a result, Plaintiffs' invocation of equitable estoppel fails, and their claims

under Magnuson-Moss and Song-Beverly should be dismissed.[11]

### D.    The Facts Alleged in the Complaint Do Not State a Claim to Relief that Is "Plausible On Its Face" as Required Under Rule 8.

The facts alleged in the Complaint, as opposed to the legal conclusions, do not

show a "plausible entitlement to relief" as required under Rule 8 and the recent

---

[10] In the Complaint, Plaintiffs also asserted that the Complaint is not timed-barred due to fraudulent concealment.  Harley-Davidson addressed this argument in the Motion to Dismiss, *see* Mot. at 26,  and Plaintiffs do not respond in their Opposition.  In short, Plaintiffs assertion of fraudulent concealment fails because they had at least inquiry, if not actual notice of the existence of Part II.

[11] It is no answer to assert, as Plaintiffs do, that where the Complaint "properly anticipates an affirmative defense," an issue of fact is automatically created.  Opp'n at 30.  If that were the case, all plaintiffs would include assertions of equitable estoppel, the discovery rule, and fraudulent concealment in all complaints as a matter of course, and then argue they had raised an issue of fact.  That is all Plaintiffs do here.

- 15 -

1   Supreme Court decisions in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (May 18, 2009) and *Bell*
2   *Atlantic Corp. v. Twombly*, 550 U.S. 544 (2008); Fed. R. Civ. Proc. 8.  Plaintiffs
3   attempt to brush this argument aside by calling it a "new stock argument," and by
4   stating that "Harley again ignores the Hornes' detailed allegations concerning Harley's
5   written misrepresentations concerning the $50 deductible and its [sic] allegations of
6   Harley's concealment of Part II."[12]  *See* Opp'n at 25.  But this is no "stock argument;"
7   as this Court has recently held, *Iqbal* and *Twombly* set forth the federal pleading
8   standard under Rule 8.  *See Planet Coffee Roasters, Inc. v. Dam*, 2009 WL 2486457, at
9   *3 (C.D. Cal. Aug. 12, 2009) ("Applying the standard governing motions to dismiss,
10   the Court finds that Plaintiff has not pled sufficient facts to state a claim . . . that is
11   'facially plausible.'") (citing *Iqbal*, 129 S. Ct. at 1950).

12       Specifically, *Twombly* and *Iqbal* direct courts to ignore allegations that are mere
13   legal conclusions, and review the facts alleged to determine whether the alleged
14   scheme states a "plausible" entitlement to relief.  *Iqbal, Twombly*.  Critically, where
15   the facts pled are "merely consistent" with a defendant's liability, a court may dismiss
16   the claims if there is a more likely lawful explanation.  *Iqbal*, 129 S. Ct. at 1949;
17   *Twombly*, 550 U.S. at 557.  In the Motion to Dismiss, Harley-Davidson summarized
18   the facts alleged in the Complaint and demonstrated that, whether taken individually or
19   together, they fail to state a plausible entitlement to relief.  *See* Mot. at 14-17.

20       In response, Plaintiffs emphasize that Harley-Davidson "ignored" the fact that
21   Plaintiffs' claims are based on written representations.  *See* Opp'n at 25-26 ("Harley
22   again ignores the Hornes' detailed allegations concerning Harley's written
23   representations concerning the $50 deductible and its allegations of Harley's
24   concealment of Part II").  First, it is hard to see how Harley-Davidson could have

25   _____

26   [12] Again, Plaintiffs accuse Harley-Davidson of ignoring "detailed allegations
     concerning Harley's written misrepresentations," but on the very next page they state
27   that the Complaint's allegations regarding written representations are "not clear" and
     note that they only now have specifically alleged reliance on written representations
28   in the proposed Amended Complaint.

- 16 -

1   "ignored" allegations that were not made until they were alleged in the proposed

2   Amended Complaint filed with Plaintiffs' Opposition.  But more importantly,

3   Plaintiffs fail to respond to the basic point of Harley-Davidsons' argument:  On the

4   facts pled, it is *not plausible* that Harley-Davidson "fraudulently conceals" the ESP

5   contract or engages in a "bait and switch," because Plaintiffs have alleged facts --

6   namely that Mr. Horned signed Part I and thereby "acknowledge[d] having read Part

7   II" -- showing that consumers are provided with Part II.

8         And even if it were conceivable, although implausible, that the Hornes were not

9   aware of Part II of the ESP contract, it is surely not the case that every member of a

10  nationwide class would not read Part I of the ESP contract before signing it, and thus

11  remain unaware of Part II.  This would be a poor bait and switch indeed, because Part I

12  repeatedly and specifically refers to Part II, the very document Harley-Davidson

13  supposedly "concealed."  Thus, because the facts pled are more "compatible with" and

14  "more likely explained by" the operation of a lawful service program, Plaintiffs fail to

15  state a "plausible" claim for relief as required by Rule 8.  *Iqbal*, 129 S. Ct. at 1950.

16        **E.    Plaintiffs' Unjust Enrichment Claims Fail Because Plaintiffs' Rights
17        Are Governed By the Signed ESP Contract.**

18        Plaintiffs' cause of action for unjust enrichment fails for three reasons: (1) there

19  is nothing unjust about enforcing a contract, (2) there is no cause of action for unjust

20  enrichment when the parties' rights are governed by a written agreement, and (3) there

21  is no cause of action at all for unjust enrichment in California.  Plaintiffs nevertheless

22  contend that unjust enrichment cedes to contract only where "the contract actually

23  governs the dispute," and identify a split of authority about whether there is a cause of

24  action for unjust enrichment in California.

25        Harley-Davidson's first argument thus stands untouched.  There is nothing

26  unfair or unjust in enforcing lawful exclusions from coverage under an extended

27  service plan.  As to the  second argument, Plaintiffs' distinction fails because the ESP

28  contract does govern the dispute.  Finally, to the extent there is split of authority

1    regarding the existence of a cause of action for unjust enrichment in California, the

2    cases recently decided by the Central District are more soundly reasoned.  *See, e.g.,*

3    *Shein v. Canon, U.S.A., Inc.*, 2009 WL 1774287 (C.D. Cal. June 22, 2009); *Baggett v.*

4    *Hewlett-Packard Co.*, 582 F. Supp. 2d 1261 (C.D. Cal. 2007).  As a result, Plaintiffs'

5    cause of action for unjust enrichment should be dismissed.

6        **F.**    **The Court Should Deny Leave to Amend.**

7        The Court should deny Plaintiffs' request to amend their complaint.  Plaintiffs'

8    proposed First Amended Complaint does not cure any of the defects of their original

9    complaint, and actually demonstrates the futility of re-pleading their case.

10       Plaintiffs essentially offer three changes: (1) they propose to change their story

11   to allege they relied not on oral promises, but on a supposed written brochure, both of

12   which nevertheless "directly contradict" the terms of their signed, integrated ESP

13   contract, Opp'n Ex. 3 ¶ 13; (2) they propose to provide additional detail about the

14   problems they experienced with their motorcycle, *id.* at ¶¶ 25-27; and (3) they propose

15   to rely on provisions of Magnuson-Moss and Song-Beverly that relate to service

16   contracts instead of warranties, *id.* at ¶¶ 74, 76, 84, and 86.

17       Even with these new allegations, Plaintiffs would still fail to state a claim.  First,

18   the parol evidence rule would bar evidence of the alleged brochure to contradict the

19   signed, written ESP Contract.  *See Nissan*, 2009 WL 1766797, at *5 (rejecting a

20   proffered first amended complaint where it contained representations that would

21   contradict the written warranty booklet).  Second, Plaintiffs offer no reason why

22   additional detail about the problems with their motorcycle would help them survive a

23   motion to dismiss, and Harley-Davidson can think of none.  Finally, invoking different

24   statutory provisions of Magnuson-Moss and Song-Beverly would not overcome either

25   Mr. Horne's signed acknowledgement that he read the ESP contract or the time-bar

26   that is evident on the face of both the original Complaint and the proposed amended

27   complaint.  Accordingly, Plaintiffs' proposed First Amended Complaint still fails to

28   state a claim and leave to amend should be denied.

- 18 -

## III.   CONCLUSION

Mr. Horne signed the ESP contract -- an integrated agreement -- and acknowledged having read it.  That much is not in dispute.  Plaintiffs now ask this Court, however, to ignore the legal implications of the ESP contract, including that it is a *binding admission* of the contents therein, that extrinsic evidence is excluded to vary its terms, that it renders Plaintiffs' alleged reliance on contrary representations unreasonable as a matter of law, and that it insulates conduct consistent with its terms from serving as basis for liability under the consumer protection statutes.  These rules have developed over time to govern the interplay between tort and contract law, and they cannot be blithely brushed aside or ignored based on illusory questions of fact.

This motion seeks nothing more drastic than a ruling that when a consumer  has signed and acknowledged reading a contract, he has received it and it is binding.  On that basis alone, all of Plaintiffs' claims fail, and the Court should dismiss the Complaint without leave to amend.[13]

Dated:  August 24, 2009                    ARNOLD & PORTER LLP


                                            By: /s/ George F. Langendorf
                                                Angel A. Garganta
                                                George F. Langendorf
                                                Zachary B. Allen

                                                Attorneys for Defendants Harley-
                                                Davidson, Inc., Harley-Davidson
                                                Motor Company, Inc., and Harley-
                                                Davidson Financial Services, Inc.

---

[13] Defendants' Motion to Dismiss was just over 28 pages long, when it should have been no more than 25 pages under Local Rule 11-6.  Plaintiffs made a similar error: their Opposition is 35 pages long.  Defendants apologize to the Court, and have limited their reply to fewer than 20 pages to make up the difference.

- 19 -